**Helen DUNNIGAN, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. 99 CIV. 4059(SAS).**

United States District Court, S.D. New York.

March 8, 2000.

Scott M. Riemer, Michael E. Schoeman, Schoeman, Updike & Kaufman, LLP, New York, NY, for Plaintiffs.

Myron D. Rumeld, Proskauer Rose LLP, New York, NY, for Defendant.

Karen Handorf, Marcia E. Bove, Washington, DC, As Amicus Curiae.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

This uncertified class action raises a narrow but important issue that remains unsettled in the Second Circuit, namely whether a plan beneficiary may maintain an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., solely to recover interest on plan benefits that were paid after a period of delay. Although the majority of courts to consider this issue have found that ERISA does not provide a remedy for those who seek interest on delayed benefit payments rather than payment of benefits themselves, both the Third and Seventh Circuits recently recognized the viability of independent claims for interest under the statute.

Plaintiff Helen Dunnigan and the other purported class members are beneficiaries of various long-term disability insurance policies issued by defendant Metropolitan Life Insurance Company ("MetLife").[1] Plaintiffs seek, pursuant to two alternative provisions of ERISA, an award of interest on disability benefit payments they received retroactively from MetLife. Plaintiffs do not dispute the principal amounts of their benefit payments. Rather, plaintiffs complain that MetLife's delay in payment of those benefits deprived them of the time value of their money.

Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the amended class action complaint ("Complaint") for failure to state a claim upon which relief may be granted.[2]

---

1. Throughout this opinion, "plaintiff" refers to the single named plaintiff, Helen Dunnigan. "Plaintiffs" refers collectively to Dunnigan and the purported, unnamed class members.

2. Because defendant has already answered the Complaint, its motion should technically be styled as a Rule 12(c) motion for judgment on the pleadings. See Fed.R.Civ.P. 12(b), (c); *Leather v. Eyck*, 180 F.3d 420, 423 n. 4 (2d

Specifically, defendant contends that plaintiffs' claims for interest are properly characterized as claims for extracontractual, compensatory damages and that such damages are not recoverable under ERISA.

Although the language and policy of ERISA, together with common law contract principles, support recognition of an independent cause of action for recovery of interest under the statute, any such action requires an individualized assessment of the facts and equities surrounding each claim and thus cannot be maintained on behalf of a class of plaintiffs. Accordingly, and for the reasons that follow, defendant's motion is granted in its entirety.

## I. Legal Standard

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir.1999). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotations omitted). Thus, in deciding such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *Harris*, 186 F.3d at 247. Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted). In deciding a Rule 12(b)(6) motion, the district court must

limit itself to facts stated in the complaint, documents attached to the complaint as exhibits or documents incorporated in the complaint by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999).

## II. Background

The facts and allegations set forth below are taken from the Complaint. They are presumed true for purposes of this motion.

### A. Factual Background

MetLife is an insurance company with its principal place of business in New York, New York. Complaint ¶ 5. MetLife issues disability insurance policies for employee welfare benefit plans nationwide. *Id.* ¶¶ 5–6. With respect to the various MetLife disability insurance policies at issue in this case, MetLife is a "fiduciary" within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). *Id.* ¶ 7.

In October 1990, Dunnigan joined the New York City office of Deloitte & Touche as an auditor. *Id.* ¶ 14. Deloitte & Touche provides its employees with disability insurance through a group Long Term Disability Plan (the "Deloitte Plan" or the "Plan") issued by MetLife. *See* Summary Plan Description of Deloitte & Touche Long Term Disability Plan ("Deloitte Plan Summary"), Ex. A to Affidavit of Scott Riemer, Counsel for Plaintiff ("Riemer Aff."), at 4.17.[3] The Deloitte Plan is an employee welfare benefit plan within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002(1). Complaint ¶ 4. Dunnigan enrolled in the Deloitte Plan and was at all relevant times a plan "participant" within the meaning of section 3(7) of ERISA, 29 U.S.C. § 1002(7). *Id.*

---

Cir.1999). However, in resolving a motion under Rule 12(c), courts "app[ly] the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). Accordingly, defendant's mischaracterization of its motion is of no legal significance.

3. The Deloitte Plan is incorporated by reference in the Complaint. Accordingly, both the Deloitte Plan and the Deloitte Plan Summary are properly considered on this motion to dismiss. *See Dangler*, 193 F.3d at 138.

In March 1994, Dunnigan was diagnosed with Chronic Fatigue Syndrome. *Id.* ¶ 15. She was rendered totally disabled by the disease. *Id.* On July 11, 1994, Dunnigan applied to MetLife for long-term disability benefits. *Id.* ¶ 16. MetLife denied Dunnigan's application for benefits on November 15, 1994. *Id.* ¶ 17. MetLife's denial of benefits was issued approximately 125 days after Dunnigan filed her application. The Complaint makes no allegations with respect to the circumstances surrounding MetLife's denial of plaintiff's application. Specifically, the Complaint does not allege that the denial of benefits, or the 125–day delay in notification, were due to any bad faith on the part of MetLife.

On February 15, 1995, Dunnigan appealed MetLife's denial of benefits. *Id.* ¶ 19. In a letter dated August 2, 1995, MetLife denied plaintiff's appeal and stated that plaintiff could bring no further appeals. *Id.* ¶ 21. MetLife's denial of plaintiff's appeal was issued approximately 165 days after she filed her initial appeal. Again, the Complaint makes no allegations with respect to the circumstances surrounding MetLife's denial of plaintiff's appeal. Specifically, the Complaint does not allege that the denial of plaintiff's appeal, or the 165–day delay in notification, were due to any bad faith on the part of MetLife.

From August 1995 through November 1998, plaintiff retained counsel and submitted additional appeals to MetLife. *Id.* ¶ 23. Then, in February 1999, MetLife reversed its denial of plaintiff's disability benefits and granted plaintiff retroactive benefits for the period from June 23, 1994 through January 31, 1999. *Id.* ¶ 24. MetLife tendered those retroactive benefits in a lump sum payment by check dated February 8, 1999. *Id.* ¶ 25. The lump sum amount was calculated by multiplying plaintiff's monthly benefit as specified under the terms of the Deloitte Plan by the number of months from the date of entitlement—here, June 23, 1994. *Id.* ¶ 8(c). The Complaint does not make any allega-

tions as to why, in February 1999, MetLife reversed its position regarding plaintiff's entitlement to benefits. Nor does the Complaint allege that the more than four year delay between the time plaintiff first applied for benefits and MetLife's determination that she was eligible for such benefits was due to bad faith on the part of MetLife.

As a matter of company policy, MetLife did not pay plaintiff any interest on her retroactive benefits. *Id.* ¶ 26. Cindy McKillip, Case Management Specialist for MetLife, informed plaintiff's counsel that "regardless of the factual circumstances[,] MetLife never pa[ys] interest on back benefits except when ordered to do so by a court of law." *Id.* ¶ 28.

### B. Procedural Background

Plaintiff commenced litigation on June 4, 1999. Three months later, on September 29, plaintiff filed the instant Complaint.[4]

In the Complaint, plaintiff seeks to represent a proposed class of persons who:

(a) were covered by a policy of long-term disability insurance issued by MetLife, *id.* ¶ 8(a);

(b) were determined by MetLife, after a period of delay, to be totally disabled and entitled to disability benefits, *id.* ¶ 8(b);

(c) were paid retroactive benefits in a lump sum by MetLife, *id.* ¶ 8(c); and

(d) were not paid interest on those retroactive benefits, *id.* ¶ 8(d).

Plaintiff contends that she and the purported class members are entitled to an award of interest on their retroactive benefits to compensate them for "the time-value loss" of receiving benefit payments in a lump sum after a period of delay. *Id.*

The Complaint sets forth four alternate claims for relief. Claim I seeks an award of interest as a matter of plan interpretation pursuant to section 502(a)(1)(B) of

4. Defendant answered plaintiff's Complaint on October 6, 1999.

ERISA, 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶¶ 29–36. Claims II and III seek equitable relief pursuant to section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B). *Id.* ¶¶ 37–48.[5] Claim IV seeks payment of attorneys' fees and costs pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1). *Id.* ¶¶ 49–50.

Defendant moved to dismiss the Complaint on November 4, 1999, arguing that claims for interest on delayed benefit payments cannot be maintained under ERISA. On December 9, the Secretary of the United States Department of Labor requested permission to file an amicus curiae brief. With the Court's permission, the Department of Labor filed an amicus brief in support of plaintiff's claims for interest on December 22.[6] On January 12, 2000, defendant replied jointly to plaintiff's opposition and the Department of Labor's amicus brief.

## III. Discussion

As set forth above, defendant's motion turns upon the issue of whether a plan beneficiary may maintain an action under ERISA solely to recover interest on benefits that were paid retroactively after a period of delay. Before analyzing the applicable legal principles, it is helpful to consider the gravamen of the Complaint through the lens of common sense and basic notions of fairness.

Plaintiff's claim for interest is premised upon the truism that monthly benefits have a time-value component that is lost when those benefits are paid retroactively in a lump sum. *See* Pl. Opp. at 7–8. To illustrate, there is a real economic difference between a payment of $1,000 in June 1994 and payment of that same $1,000 in

February 1999. If an employee is entitled to a benefit payment of $1,000 in June 1994 but does not receive that payment until February 1999, then the employee has lost the present value of her June 1994 benefit payment.

At the same time, administrators of employee benefit plans face the enormous administrative task of processing applications for disability benefits and determining which employees are entitled to such benefits under the terms of the relevant plan. Some period of delay between an employee's application for benefits and the plan's final determination of eligibility is necessary and inevitable. The question is whether, under ERISA, the employee is entitled to—and the plan is responsible for—payment of interest as compensation for the period of delay.

In *Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court described ERISA as embodying "competing congressional purposes". On the one hand, there is "Congress' desire to offer employees enhanced protection for their benefits ... and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Id.* The *Varity* Court instructed that in resolving issues that arise under ERISA, "courts may have to take account of" these competing congressional goals. *Id.* This case requires exactly that—a fair balancing between the rights of the plan beneficiary and the integrity and reasonable administration of the plan.

---

5. Specifically, Claims II and III seek monetary restitution "in an amount equal to the interest withheld by MetLife on the Retroactive Benefits paid to plaintiff and each class member" and/or "disgorgement of the profits MetLife earned by withholding interest on the Retroactive Benefits." Complaint at pp. 9–11. Claims II and III also seek various declaratory judgments. *See id.*

6. Not only does the Department of Labor support plaintiff's position in this litigation, the arguments set forth in its amicus brief exactly mirror those advanced by plaintiff in opposition to defendant's motion. Thus, although the Department's arguments were carefully considered, there are no citations to its amicus brief.

Turning now to the statute, section 502(a) of ERISA sets forth "six carefully integrated civil enforcement provisions" that constitute an "interlocking, interrelated, and interdependent remedial scheme". *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Two of those provisions, sections 502(a)(1)(B) and 502(a)(3)(B), are relevant to resolution of the instant dispute.

Section 502(a)(1)(B) authorizes a plan participant or beneficiary to sue "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3)(B) allows a plan participant or beneficiary "to obtain other appropriate equitable relief (i) to redress [violations of ERISA or the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).

Plaintiff invokes both sections as alternate grounds for recovery of interest. Although I conclude that only 502(a)(3)(B) supports recovery of such relief under the statute, I address plaintiff's arguments with respect to each provision below, keeping in mind the need to balance the rights of the beneficiary and the rights of the plan.

### A. Claim I: ERISA Section 502(a)(1)(B)

Section 502(a)(1)(B) permits plan beneficiaries to bring an action for recovery of plan benefits. In *Russell,* which involved a provision of ERISA not at issue here, the Supreme Court stated in dicta that

the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan— § 502(a)(1)(B)—says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.

*Russell,* 473 U.S. at 144, 105 S.Ct. 3085 (citation omitted). Since *Russell,* it is generally accepted that section 502(a)(1)(B) does not allow for the recovery of extracontractual damages and may only support a claim for contractually authorized benefits. *See, e.g., Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) ("[U]nder *Russell,* participants cannot recover 'extracontractual' damages under [section 502(a)(1)(B) ]."); *Klein v. Empire Blue Cross & Blue Shield,* 93 Civ. 5187, 1998 WL 336633 (S.D.N.Y. June 23, 1998)(same). Moreover, courts in the Second Circuit have uniformly held that interest on delayed benefit payments is "extracontractual" relief that cannot be recovered under section 502(a)(1)(B). *See Walsh v. Eastman Kodak Co.,* 53 F.Supp.2d 569, 571–73 (W.D.N.Y.1999); *Klein,* 1998 WL 336633, at *3; *O'Rourke v. Pitney Bowes, Inc.,* 95 Civ. 10288, 1997 WL 431091, *14 (S.D.N.Y. July 31, 1997); *DeVito v. Pension Plan of Local 819,* 975 F.Supp. 258, 270–273 (S.D.N.Y.1997); *Frank v. Civil Serv. Employee Ass'n, Inc.,* 91 Civ. 673, 1992 WL 73191, *1 (W.D.N.Y. Mar.20, 1992). Indeed, no court in this Circuit or elsewhere has recognized a claim for interest on delayed benefit payments under section 502(a)(1)(B).[7]

---

**7.** As discussed *infra* Part III.B., two of the three courts that have recognized ERISA claims for interest on delayed benefits did so pursuant to section 502(a)(3)(B), not section 502(a)(1)(B). *See Clair v. Harris Trust & Savs. Bank,* 190 F.3d 495 (7th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1166, 145

L.Ed.2d 1076 (2000); *Fotta v. Trustees of the United Mine Workers of Am.,* 165 F.3d 209 (3d Cir.1998). The third court failed to identify which section of ERISA it relied upon for its holding. *See Hizer v. General Motors Corp.,* 888 F.Supp. 1453 (S.D.Ind.1995).

Plaintiff concedes, as she must, that claims for extracontractual damages are not recoverable pursuant to section 502(a)(1)(B). *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.Opp.") at 6–7. However, plaintiff takes the position that the interest she seeks is not "extracontractual"; rather, plaintiff claims, such interest is an aspect of the plan benefit itself. *See* Complaint ¶¶ 8(d), 34; Pl. Opp. at 7–12.

Plaintiff advances two arguments in support of her position that the interest she seeks is contractually authorized. *First,* plaintiff contends that the Deloitte Plan "can only be interpreted as requiring Met-Life to pay plan participants the time-value of delayed accrued benefits as a component of their Plan benefits." Pl. Opp. at 1. *Second,* plaintiff contends that "as a matter of federal common law, the payment of interest is an implied term of all contracts, including the [Deloitte] Plan." *Id.* Both arguments are unavailing.

### 1. Interest Not Provided for Under the Plan

Plaintiff claims that she is entitled to interest on delayed benefit payments pursuant to the plain terms of the Deloitte Plan. Properly characterized, plaintiff challenges both MetLife's interpretation of the terms of the Deloitte Plan, and its denial of what plaintiff alleges is the interest component of her benefit under the Plan.

#### a. Standard of Review

As a threshold matter, I first address the standard of review governing MetLife's interpretation of the Plan document and its corresponding denial of interest on delayed benefit payments. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § [502](a)(1)(B) is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948 (emphasis added). "Where the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard ...." *Kinstler v. First Reliance Std. Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999).

Under the de novo standard of review, courts must apply "traditional principles of contract interpretation". *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 230 (2d Cir.1995); *see also I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Ins. Trust Fund,* 136 F.3d 114, 119 (2d Cir.1998). This means that "unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 149 (2d Cir.1999). " 'Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.' " *Id.* (quoting *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir.1994)).[8] If plan language is ambiguous, the rule of contra proferentem applies and all ambiguities must be construed against the drafter of the plan. *See I.V. Servs. of Am.,* 136 F.3d at 121 & n. 9.

In contrast, the arbitrary and capricious standard of review "is highly deferential to a plan administrator." *Jordan v. Retirement Comm. of Rensselaer Polytech. Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995). Pursuant to this standard, a denial of benefits may be overturned "only if [the decision] was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995). Under the arbitrary and capricious stan-

---

**8.** Ambiguity is a question of law to be determined by the court. *See Sayers v. Rochester Tel. Corp. Supplemental Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993); *Thomas De La Rue AG v. United States Banknote Corp.,* 979 F.Supp. 968, 971 (S.D.N.Y.1997).

dard, "[t]he court may not upset a reasonable interpretation by the administrator." *Jordan*, 46 F.3d at 1271. Moreover, the rule of contra proferentem does not apply. *See I.V. Servs. of Am.*, 136 F.3d at 121 & n. 9.

In the instant case, the parties disagree as to whether this Court should apply an arbitrary and capricious or de novo standard. Defendant argues that the arbitrary and capricious standard is appropriate because the Deloitte Plan explicitly grants plan fiduciaries discretionary authority to interpret the terms of the plan. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.Mem.") at 6 & n. 4.[9] In response, plaintiff contends that "[f]ollowing discovery, [p]laintiff will show that MetLife's interpretation of the Plan is affected by a financial conflict of interest", and therefore the Court should conduct a de novo review. Pl. Opp. at 9.

■ In *Bruch*, the Supreme Court stated that an alleged conflict of interest does not change the standard of review but rather becomes "a facto[r] in determining whether there is an abuse of discretion." 489 U.S. at 115, 109 S.Ct. 948 (internal quotations omitted). Thus, where otherwise appropriate, courts should apply the arbitrary and capricious standard "regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." *Id.; see also Pagan*, 52 F.3d at 442.

In light of *Bruch*, it is likely that the deferential arbitrary and capricious standard of review is applicable here. However, I decline to reach this issue because under either standard—arbitrary and capricious or de novo—plaintiff is not entitled to interest on delayed benefits under the plain and unambiguous terms of the Plan.

### b. Terms of Deloitte Plan

■ Keeping in mind the well-settled principle that section 502(a)(1)(B) provides a cause of action only for recovery of those benefits specifically set forth in an ERISA plan document, I have carefully reviewed the terms and provisions of the Deloitte Plan and the Deloitte Plan Summary. Nowhere within the four corners of either document is there any mention of— let alone provision for—"interest" on delayed benefit payments. *See* Deloitte Plan, Ex. A to Sullivan Aff.; Deloitte Plan Summary, Ex. A to Riemer Aff. The Plan and Plan Summary are utterly silent with respect to interest, nor do they prescribe any method for calculating interest. This is dispositive evidence that interest on delayed benefits is not contractually authorized under the Plan. *See DeVito*, 975 F.Supp. at 272 (finding that where plan failed to "prescribe any method of calculating interest on withheld benefits" and did not "require such interest payments to be made", fiduciary had no obligation to award interest under the terms of the plan); *Sahlie v. Nolen*, 984 F.Supp. 1389, 1398 (M.D.Ala.1997)("[W]here a plan neither requires interest payments on withheld benefits nor prescribes any method of calculating such interest ... the decision to deny interest payments on withheld benefits could not be considered unreasonable under any standard of review."); *Scott v. Central States, Southeast & Southwest Areas Pension Plan*, 727 F.Supp. 1095, 1098 (E.D.Mich.1989) (finding that, under any standard of review, fiduciary was under no obligation to pay plaintiff's claim for interest where the plan "neither required nor prohibited the payment of

---

9. Specifically, the Deloitte Plan states:

In carrying out their respective responsibilities under the plan, the plan administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan.

Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the determination was arbitrary and capricious.

Deloitte Plan, Ex. A to Affidavit of Laura Sullivan, Business Procedures Consultant for MetLife ("Sullivan Aff."), at 14.

interest"); *see also Clair*, 190 F.3d at 497 ("[Plaintiffs'] argument that benefits include interest on benefits when the benefits are paid late is inconsistent with the principle that benefits payable under an ERISA plan are limited to the benefits *specified* in the plan." (emphasis added)).

Plaintiff's contrary arguments are premised not upon the Plan's express references to interest—there are none—but upon a strained and unreasonable interpretation of two Plan provisions, subsections 2 and 7. *See* Pl. Opp. at 7.

Subsection 2 of the Plan, entitled "Benefits", provides: "When we receive proof that you are Disabled, we will pay a Monthly Benefit in accordance with the Schedule of Benefits." Deloitte Plan, Ex. A to Sullivan Aff., at 6. This unambiguous provision does not address, and cannot possibly support, a claim for interest. The plain language states that once MetLife receives proof that a Plan participant is disabled, MetLife will pay the participant a "Monthly Benefit" based upon the "Schedule of Benefits" set forth in the Plan. Although plaintiff points to the term "Monthly Benefit" as evidence that interest is contractually authorized, *see* Pl. Opp. at 7–8, that term is expressly defined in the Schedule of Benefits as, inter alia, a percentage of the participant's "Monthly Earnings" minus certain other compensation and benefits, *see* Deloitte Plan, Ex. A to Sullivan Aff., at 2. The definition of "Monthly Benefit" makes no reference to interest or to a time-value component of any kind.[10]

Subsection 7 of the Plan, entitled "Time Limit for Payment of Claim", provides: "If the written proof of a claim; (a) has been made on time; and (b) is satisfactory to us; we will pay the accrued benefits monthly at the end of the period for which they are due." *Id.* at 9. Plaintiff analyzes each word comprising the final clause of subsection 7 and concludes that this provision requires MetLife to pay Plan participants the "time value component" of their benefits, "even when benefits are withheld pending MetLife's determination of disability." Pl. Opp. at 8. Plaintiff contends:

> By the time that MetLife determined that Ms. Dunnigan was disabled, her "accrued benefits" consisted of 55 months of benefits (from July 1994 through January 1999). Despite this delay, Subsection 7 nonetheless required MetLife to pay each of these benefits as of the date they were due. Thus, in February 1999, MetLife was required to pay Ms. Dunnigan her June 1994 benefit on June 30, 1994, her July 1994 benefit on July 31, 1994, and so on. . . . The only way that MetLife could have discharged its obligation to pay Ms. Dunnigan her accrued benefits retroactive to their due dates as required by Subsection 7 was to pay Ms. Dunnigan the present value of such accrued benefits.

*Id.* at 8–9 (footnotes omitted). There is a clear disconnect between plaintiff's argument and what I find to be the unambiguous terms of the Plan document.

Under the plain language of subsection 7, benefits are "due" when the beneficiary's proof of claim "is satisfactory to [MetLife]." Deloitte Plan, Ex. A to Sullivan Aff., at 9. In the instant case, MetLife was satisfied with plaintiff's proof of claim in February 1999. Fifty-five months of "accrued benefits" were thus "due" on that date. Plaintiff is correct that subsection 7 "required MetLife to pay each of these [retroactive] benefits as of the date they were due." However, there is absolutely no support in the language of the contract for plaintiff's conclusion that her June 1994 benefit was "due" on June 30, 1994 and her

---

10. For example, "Option 1" of the Schedule of Benefits provides:

The Monthly Benefit is the lesser of:
1. The Maximum Monthly Benefits shown below, minus Other Income Benefits;
2. 66⅔% of Basic Monthly Earnings, minus Other Income Benefits; or

3. 100% of Indexed Basic Monthly Earnings, minus Other Income Benefits and any compensation earned while you are Disabled.

Deloitte Plan, Ex. A to Sullivan Aff., at 2. All of the capitalized terms are defined in the Plan. None provide for interest.

July 1994 benefit was "due" on July 31, 1994. Subsection 7 clearly provides that plaintiff's June 1994 benefit was "due" in February 1999, the date when MetLife was first convinced of plaintiff's disability. Therefore, not only does subsection 7 make no provision for interest, it also demonstrates that plaintiff's benefits were paid when they were "due" under the Plan. Accordingly, no interest could have accumulated in any event.

Similarly, Black's Law Dictionary defines the term "accrued" as "due and payable; vested." Black's Law Dictionary 19 (6th ed.1990).[11] This means that the fifty-five months of benefits plaintiff received retroactively did not "accrue" until February 1999—the date they were "due and payable." Again, because the benefits did not accrue until February 1999, no interest could have accumulated under the Plan.[12]

Finally, despite plaintiff's backward-looking interpretation of the term "monthly", that term can only be read as forward-looking within the context of subsection 7. Once written proof is "satisfactory to MetLife", MetLife is obligated to pay "the accrued benefits monthly at the end of the period for which they are due." Deloitte Plan, Ex. A, to Sullivan Aff., at 9. The first time any benefits were due and owing to plaintiff was in February 1999 when MetLife determined it was satisfied with Dunnigan's proof of claim. At that

time, MetLife was obligated to pay all of the "accrued benefits" for the month of February 1999—fifty-five benefit payments. At the end of each month thereafter, or "monthly", MetLife was (and presumably is) obligated to pay the accrued benefits for that month. So, in March 1999, MetLife was obligated to pay the accrued benefits for that month, presumably one benefit payment. In April 1999, MetLife was obligated to pay another accrued benefit payment for that month. Put simply, when viewed objectively by a reasonable person who has examined the context of the entire Plan document, the language of subsection 7 is capable of only one meaning, namely that MetLife must pay "accrued benefits monthly", forward-looking from the first date those benefits are due, here February 1999.

In summary, plaintiff's contention that interest is expressly authorized under the terms of the Deloitte Plan is based solely on the fact that the Plan—like virtually all long-term disability plans—provides for "monthly" benefit payments. This unremarkable condition cannot under any standard of review form the basis for a contractual entitlement to interest on delayed benefit payments.[13]

### 2. No Interest Implied Under Federal Common Law

Plaintiff argues in the alternative that even if "subsections 2 and 7 could not be

---

**11.** Indeed, plaintiff quotes Black's definition of "accrued" in her brief. *See* Pl. Opp. at 8 n. 3.

**12.** Plaintiff confuses the term "entitled" with the terms "accrued" and "due." MetLife determined in February 1999 that plaintiff was disabled beginning in June 1994. Thus, plaintiff was "entitled" to retroactive benefits for the period from June 23, 1994 through January 31, 1999. However, as set forth above, although plaintiff was "entitled" to fifty-five benefit payments, those payments were not "due" and thus did not "accrue" until February 1999, the date when MetLife was satisfied with plaintiff's proof of claim that she was disabled from June 1994.

**13.** I also note that the Complaint is silent as to whether the contractual provisions of all MetLife disability insurance policies are iden-

tical. That is, plaintiff purports to represent a class of persons who are enrolled in MetLife disability insurance policies offered by employers other than Deloitte & Touche. *See* Complaint ¶¶ 6, 8(a). Without any allegations as to the similarity of the various plans, it is unclear whether plaintiff's detailed textual analysis of the Deloitte Plan is applicable to the various other plans in which the purported class members participate. If, in fact, the plans are not identical, then even assuming for the sake of argument that the Deloitte plan does authorize interest on delayed benefits, it would not follow that all MetLife plans authorize such interest. Under such a scenario, section 502(a)(1)(B) could not provide a cause of action for class-wide relief.

interpreted as creating an entitlement" to interest on delayed benefits, a provision for such interest should be implied as a matter of federal common law. Pl. Opp. at 10. In support of her proposition, plaintiff quotes the following passage from *Fotta v. Trustees of the United Mine Workers of Am.*, 165 F.3d 209 (3d Cir.1998):

> Interest for *late payment* has long been regarded as an implicit part of a contractual obligation to pay money. This principle was recognized by the Supreme Court more than a century ago: "Every one who contracts to pay money on a certain day knows that, *if he fails to fulfill his contract, he must pay the established rate of interest as damages for his nonperformance.* Hence it may correctly be said that such is the implied contract of the parties."

*Id.* at 213 (quoting *Spalding v. Mason*, 161 U.S. 375, 396, 16 S.Ct. 592, 40 L.Ed. 738 (1896))(emphasis added).

■ The flaw in plaintiff's argument is that it is premised upon MetLife's breach of the Plan. That is, *Fotta* and all of the other authorities cited by plaintiff, *see* Pl. Opp. at 10–11, stand for the proposition that where a party fails to make payment when due under the relevant contract, that party must pay interest for its breach. As set forth in the preceding section, however, MetLife has fulfilled—not breached—its payment obligations under the terms of the contract. The Deloitte Plan provides that benefits are "due" when proof of a claim "is satisfactory to MetLife." Deloitte Plan, Ex. A to Sullivan Aff., at 9. According to the Complaint, MetLife was not satisfied by plaintiff's proof of claim until February 1999, at which time it tendered a lump sum payment of accrued benefits. *See* Complaint ¶¶ 24–25. MetLife has not breached its payment obligations under the contract, and therefore

it would be inappropriate to impose an implied term of interest as a matter of federal common law.

## B. Claims II and III: 502(a)(3)(B)

Claims II and III of the Complaint seek relief pursuant to section 502(a)(3)(B) of ERISA, which, as set forth above, permits beneficiaries "to obtain other appropriate equitable relief (i) to redress [violations of ERISA or of the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). Section 502(a)(3)(B) "authorizes suits to redress plan violations, as distinct from suits to recover unpaid benefits [under section 502(a)(1)(B) ]." *Clair*, 190 F.3d at 497.

Defendant contends that plaintiff's claims under section 502(a)(3)(B) should be dismissed for two reasons. *First,* defendant argues that because plaintiff seeks solely money damages, she cannot, as a matter of law, maintain a claim for equitable relief under section 502(a)(3)(B). *Second,* defendant argues that even assuming an award of money damages is appropriate under section 502(a)(3)(B), plaintiff has not adequately alleged an underlying breach which would warrant such relief.

### 1. Recovery of Interest or "Money Damages" Under 502(a)(3)(B)

Historically, district courts in the Second Circuit have dismissed claims for interest brought pursuant to section 502(a)(3)(B), relying primarily upon *Lee v. Burkhart*, 991 F.2d 1004 (2d Cir.1993). *See Walsh*, 53 F.Supp.2d at 573–74; *DeVito*, 975 F.Supp. at 270–71; *Frank*, 1992 WL 73191, at *1–2.[14] *Lee* involved a suit brought by two plan participants seeking reimbursement for covered medical costs incurred by them but unpaid due to the bankruptcy of their plan's self-insured

---

**14.** The district courts also cite *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), in which the Supreme Court held that a plan participant's suit against the plan's actuary (a nonfiduciary under ERISA) for "equitable relief" under section 502(a)(3)(B) was nothing more than a suit for money or "compensatory damages". *Id.* at 255, 113 S.Ct. 2063. The *Mertens* Court concluded that such compensatory damages were unavailable under section 502(a)(3)(B). *See id.*

sponsor. *See Lee,* 991 F.2d at 1005. The *Lee* court held that the participants could not maintain their claim under section 502(a)(3)(B), because they sought money damages, and "[m]oney damages are generally unavailable under [section 502(a)(3)(B) ]." *Id.* at 1011. Accordingly, the courts in *Walsh, DeVito* and *Frank* concluded that because interest on delayed benefits constitutes "money damages", such relief is not recoverable under section 502(a)(3)(B).

However, the reasoning of *Walsh, DeVito* and *Frank* with respect to the availability of interest or money damages under section 502(a)(3)(B) has been effectively overturned by the Second Circuit's recent decision in *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir.1999)(to be reported at 202 F.3d 138). In *Strom,* the plaintiff's late husband applied for life insurance benefits in a timely fashion but, due to the defendant's alleged negligence in processing the application, coverage was not effective when the husband died suddenly of a heart attack. *See id.* at 140–41. The plaintiff sought, pursuant to section 502(a)(3)(B) of ERISA, recovery of the "$500,000 that she would have received had Goldman's alleged breach of fiduciary duty not resulted in her husband's group life insurance failing to become effective before his death.... In other words, she [sought] only to be made whole for the loss of the benefit that otherwise would have been paid to her under the plan." *Id.* at 143 (footnote omitted).

■ The district court dismissed the plaintiff's ERISA claim, characterizing it as one for "monetary damages, not equitable relief." *Strom v. Goldman, Sachs & Co.,* 96 Civ. 7432, 1997 WL 805403, *2 (S.D.N.Y. Dec. 30, 1997). The Court of Appeals reversed the trial court, finding

that the money damages plaintiff sought—$500,000 in unpaid benefits caused by the defendant's alleged breach of its fiduciary duties—was "make whole relief". *Id.* at *8, 12. The Second Circuit concluded that such "make whole relief" is "equitable relief within the meaning of Section 502(a)(3)(B)" and "would be 'appropriate' in the event plaintiff establishes liability on the part of [the defendant]". *Id.* at *12. Thus, the lesson of *Strom* is that a plan participant may recover monetary restitution, or "make whole" relief, from a plan fiduciary under section 502(a)(3)(B), as long as the participant establishes liability—that is, a breach of ERISA or the plan document.[15]

The Seventh and the Third Circuits have recently reached similar conclusions. *Clair v. Harris Trust & Savings Bank,* 190 F.3d 495 (7th Cir.1999), *cert. denied,* — U.S. ——, 120 S.Ct. 1166, 145 L.Ed.2d 1076 (2000), involved a class action suit in which the plaintiffs sought to recover interest on retirement benefits they received after a period of delay. *See id.* at 496. In evaluating the sufficiency of plaintiffs' claim for interest under 502(a)(3)(B), the Seventh Circuit stated:

[T]he plaintiffs here are seeking money. But not all monetary relief is damages. Equity sometimes awards monetary relief, or the equivalent, and restitution is both a legal and an equitable remedy that is monetary yet is distinct from damages....

. . . .

....[R]estitution is equitable when sought by a person complaining of a breach of trust, as these plaintiffs are.

*Id.* at 498. Although the *Clair* court concluded that the plaintiffs could maintain a suit for interest under 502(a)(3)(B), it dis-

---

15. *Strom* distinguished *Mertens* by noting that the Supreme Court case (i) involved a suit by a plan participant against a nonfiduciary "under a statute that appears to reflect a deliberate decision not to create remedies against nonfiduciaries"; and (ii) did not overrule other Supreme Court precedent which distinguishes between pure, equitable "make whole" remedies such as the damages at issue in *Strom* and "claims for consequential and other more generous measures of injury" which are not solely equitable in nature. *Strom,* 202 F.3d at 147–48.

missed the plaintiffs' claim under that section on the merits, finding that the plaintiffs' complaint did not adequately allege a breach of ERISA or the terms of the plan document.[16]

In *Fotta v. Trustees of the United Mine Workers of America*, 165 F.3d 209 (3d Cir.1998), the Third Circuit also held that claims for interest on delayed benefit payments may be maintained under section 502(a)(3)(B). *See id.* at 213. Rejecting the theory that an award of interest is money damages rather than equitable relief, the *Fotta* Court explained: "[T]he awarding of interest where benefits have been unjustifiably delayed not only ensures full compensation, but also serves to prevent unjust enrichment. Restitution— the traditional remedy for unjust enrichment—is widely, if not universally, regarded as a toll of equity." *Id.*[17]

■ In light of the binding precedent of *Strom* and the persuasive precedent of *Clair* and *Fotta*, I conclude that actions for interest on delayed payments are appropriate under section 502(a)(3)(B) where plan participants establish an underlying breach of ERISA or the plan document by a plan fiduciary. I now turn to the second prong of defendant's challenge, namely whether plaintiff has adequately alleged a breach of ERISA or the Deloitte Plan which, if proven, would entitle plaintiff and the purported class to relief.

**16.** The Seventh Circuit also affirmed the trial court's dismissal of plaintiffs' section 502(a)(1)(B) claim finding that interest was "not a benefit specified anywhere in the [plaintiffs'] plan." *Id.* at 497.

**17.** Plaintiff additionally cites the Eighth Circuit's decision in *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938 (8th Cir.1999), as support for the proposition that claims for interest on delayed benefits are maintainable under section 502(a)(3)(B). *See* Pl. Opp. at 17. This is simply inaccurate. Although *Kerr* discusses various types of equitable and legal relief, it never expressly finds that interest is recoverable under section 502(a)(3)(B). *Kerr*, 184 F.3d at 943–46. Indeed, the *Kerr* court ulti-

### 2. Plaintiff Has Failed to Adequately Allege an Underlying Breach

Claims II and III both seek equitable relief premised upon allegations that MetLife breached its fiduciary duties under section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D). Complaint ¶¶ 40, 46.[18] Section 404(a)(1)(D) provides that "a fiduciary shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(D).

#### a. Claim II: Failure to Pay Interest

In Claim II, plaintiff alleges that "[b]y failing to pay interest on Retroactive Benefits, MetLife breached its fiduciary duties." Complaint ¶ 40. · Plaintiff contends that payment of interest on delayed benefits was and is an "implicit term" of the Deloitte Plan. *See id.* ¶ 39. Thus, plaintiff argues, by refusing to pay interest on plaintiff's retroactive benefits, MetLife failed to discharge its duties in accordance with the plan documents. *See id.* ¶¶ 39–40.

Because I have already determined that interest on delayed benefits was neither an explicit nor implicit term of the Deloitte Plan, *see supra* Part III.A., MetLife's failure to pay such interest cannot, as a matter of law, constitute a breach of fiduciary duty. Accordingly, Claim II is dismissed.

mately concluded that the claim at issue—a claim for interest on delayed benefit payments—was compensatory rather than equitable in nature and thus not recoverable under section 502(a)(3)(B). *See id.* at 945–46.

**18.** As set forth *supra* note 5, plaintiff seeks restitution in an amount equal to the interest withheld by MetLife and/or disgorgement of any profits MetLife earned as a result of its withholding of interest. *See* Complaint at pp. 9–11. Plaintiff's claims for relief under section 502(a)(3)(B) can also be properly characterized as "make whole" relief as that term was used in *Strom*.

#### b. Claim III: Untimely Benefit Determinations

Claim III alleges that in processing plaintiff's initial claim for benefits and her subsequent appeal, MetLife exceeded the relevant time periods set forth in the Secretary of Labor's regulations as codified at 29 C.F.R. § 2560.503–1. *See* Complaint ¶¶ 45–46. Specifically, Plaintiff claims that although 29 C.F.R. § 2560.503–1(e)(3) prescribes a ninety-day period for claim determinations, it took MetLife much longer—approximately 125 days—to inform plaintiff that her application for benefits was denied. *See id.* ¶¶ 17–18. Similarly, plaintiff claims that although 29 C.F.R. § 2560.503–1(h)(1)(i) prescribes a sixty-day period for determination of appeals, it took MetLife much longer—approximately 165 days—to inform plaintiff that her appeal was denied. *See id.* ¶¶ 20–22. Plaintiff alleges that such untimely claim processing is a violation of both ERISA and MetLife's fiduciary duties. *See id.* ¶¶ 45–46. Plaintiff is wrong.

■ In *Russell,* the Supreme Court explicitly stated that violations of the Secretary of Labor's benefit-processing time periods do not create a claim for relief under ERISA. *See* 473 U.S. at 144, 105 S.Ct. 3085. The Court stated:

> Nothing in the [Secretary of Labor's] regulations or in [ERISA] ... expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits.

Rather, the regulations merely state that a claim may be treated as having been denied after the 60– or 120–day period has elapsed.

473 U.S. at 144, 105 S.Ct. 3085 (citing 29 C.F.R. § 2650.503–1). The precedent of *Russell* mandates dismissal of Claim III.[19]

#### 3. Implied Duty of Good Faith and Fair Dealing

As a final matter, plaintiff relies heavily on the *Fotta* decision in support of her claim for interest under section 502(a)(3)(B). *See* Pl. Opp. 17–18. Plaintiff's reliance is not surprising; the *Fotta* decision embraces the theory set forth by plaintiff in this case—that monthly plan benefits have a time-value component that cannot be fully compensated for when benefits are tendered in a lump sum payment after a period of delay. *See Fotta,* 165 F.3d at 212–13. Indeed, *Fotta* explicitly states: "A late payment of benefits effectively deprives the beneficiary of the time value of his or her money ...." *Id.* As the *Fotta* court recognized, however, "section 502(a)(3)(B) does not ... authorize appropriate equitable relief at large, but only appropriate equitable relief for the purpose of redress[ing a]ny violations ... or enforcing any provisions of ERISA or an ERISA plan." *Id.* at 214 (alterations in original)(internal quotations omitted). Thus, even under the sweeping language of *Fotta,* to recover interest on delayed benefit payments pursuant to section 502(a)(3)(B), there must be an underlying breach.[20]

**19.** I also note that the proposed class is not limited to persons whose claims were processed outside of the time limits set forth in the Secretary of Labor's regulations. That is, the Complaint defines a class of persons who "were determined by MetLife to be totally disabled and entitled to long term disability benefits ... after the initial date upon which such individual was entitled to benefits." Complaint ¶ 8(b). Even assuming arguendo that failure to comply with the Secretary's regulations constitutes a breach of fiduciary duties by MetLife, only those plaintiffs (i) whose claims were denied more than ninety days (assuming MetLife did not extend the

time as it is authorized to do once under the plan) after they submitted applications; and/or (ii) whose appeals were denied more than sixty days (assuming MetLife did not extend the time as it is authorized to do once under the plan) after they sought appeal could maintain a claim based on this particular alleged breach.

**20.** The only district court in the Second Circuit to address *Fotta* expressly declined to follow its reasoning. *See Walsh,* 53 F.Supp.2d at 573–74. However, the *Walsh* court's rejection of *Fotta* was based almost exclusively on its finding that money damages

This second prong of section 502(a)(3)(B)—the requirement that any equitable relief be premised upon an underlying breach—places plan beneficiaries in an impossible, catch–22 situation. The majority of benefit plans, like the Deloitte Plan, do not provide for interest on delayed benefit payments. As a result, the failure to pay interest cannot itself constitute an underlying breach.[21] Similarly, the mere fact that a plan administrator waited months or years to grant benefits to a participant cannot form the basis for an underlying cause of action because, as set forth above, the failure to comply with the Secretary of Labor's guidelines does not itself constitute a breach of ERISA. The untenable result is that although an award of interest is theoretically viable pursuant to section 502(a)(3)(B), as a practical matter, there are no underlying claims upon which to base such relief.[22] The precise act giving rise to an award of interest— failure to pay benefits in a timely fashion—does not in and of itself constitute a breach of ERISA or typical ERISA plans.

The key to this conundrum lies not in the fact that a plan administrator tendered benefit payments after a period of delay, but in the reasons for that delay. In other words, was the administrator's delay in payment caused by negligence or bad faith on the part of the administrator, the plan participant or neutral causes beyond the control of either. Returning for a moment to the lens of common sense, this notion can be characterized as one of fault—that is, who, if anyone, is at "fault" for the delayed benefit payments. As a matter of contract law, this notion is one of good faith and fair dealing.[23]

■ It is well-settled that the common law duty of good faith and fair dealing is an implied term in every contract. *See Cross & Cross Properties Ltd. v. Everett Allied Co.*, 886 F.2d 497, 501–02 (2d Cir. 1989)("Since the duty of good faith and fair dealing is implied in every contract, contracting parties' fields of discretion under a contract are bounded by the parties' mutual obligation to act in good faith."); Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in*

are not recoverable under section 502(a)(3)(B). *See id.* As set forth above, however, the reasoning of *Walsh* with respect to the availability of money damages under 502(a)(3)(B) has been effectively overturned by the Second Circuit's subsequent decision in *Strom*. *See* discussion *supra* Part III.B.1.

21. Indeed, if the challenged plan provides for interest on delayed benefit payments, then the plan beneficiary may simply proceed under section 502(a)(1)(B). *See supra* Part III.A.

22. To illustrate, although the *Clair* court held that interest on delayed payments is available under section 502(a)(3)(B), it dismissed the plaintiffs' claim for interest under that section because the plaintiffs failed to allege a breach of ERISA or the terms of an ERISA plan. *See* 190 F.3d at 498. In *Fotta*, the only other court to expressly recognize a claim for interest on delayed benefits under 502(a)(3)(B), the court remanded the case so that the district could, in its discretion, determine whether an award of interest was appropriate. *See* 165 F.3d at 214. I could find no record of the district court's decision on remand. Moreover, as explained *infra* note 23, the *Fotta* court was vague with respect to the exact nature of the underlying breach that any

award of interest by the district court would be based upon.

23. The *Fotta* court alluded to this concept several times in its decision. For example, the Third Circuit stated: "[T]he awarding of interest where benefits have been *unjustifiably delayed* . . . ensures full compensation." 165 F.3d at 213 (emphasis added). The *Fotta* court also found that "payment for the time value of money, *when appropriate,* is an implicit term of the underlying contractual obligation." *Id.* at 214 (emphasis added). However, the Third Circuit failed to define "unjustifiable delay." Nor did it explain the circumstance under which payment for the time value of money would be "appropriate". Accordingly, although *Fotta* recognizes an independent cause of action for interest on "unjustifiably delayed" payments under section 502(a)(3)(B), it does not explicitly identify an underlying provision of ERISA or of an ERISA plan document that such an award would be based upon. To the extent *Fotta* suggests "interest" itself is an implied term of an ERISA contract, I reject that finding for the reasons stated *supra* Part III.A.2.

**324**

*Good Faith,* 94 Harv. L.Rev. 369 (1980)("A majority of American jurisdictions, the Restatement (Second) of Contracts, and the Uniform Commercial Code ... now recognize the duty to perform a contract in good faith as a general principle of contract law." (footnotes omitted)).

 The Supreme Court has instructed that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans'". *See Bruch,* 489 U.S. at 110, 109 S.Ct. 948 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Accordingly, I find, as a matter of federal common law, that the duty of good faith and fair dealing that is implied in every contract applies with equal force to ERISA plans. This means that any failure by plan administrators, or plan participants, to perform in good faith under an ERISA plan constitutes a breach of the plan. Imposition of an implied term of good faith in ERISA plans is appropriate because it accomplishes both goals of the statute; it protects the rights of the beneficiary and the rights of the plan. *See Varity,* 516 U.S. at 497, 116 S.Ct. 1065. The duty of good faith requires plan administrators to deal honestly and fairly with the claims of plan participants.[24] It also imposes a reciprocal obligation on plan participants to submit nonfrivolous and complete benefit applications which prevents unwieldy processing and administrative costs.

 Payment of benefits under the Deloitte Plan, like most disability benefit plans, is conditioned upon MetLife's satisfaction with a plan participant's proof of disability. *See* Deloitte Plan, Ex. A to Sullivan Aff., at 9. Thus, MetLife's satisfaction is a "condition precedent" to payment of benefits under the Plan. Where performance under a contract depends upon the occurrence of a condition precedent, both parties must " 'attempt in good faith' to obtain the prerequisites necessary for performing the contract." *Wang v. Chen,* 89 Civ. 8319, 1992 WL 7840, *3 (S.D.N.Y. Jan. 10, 1992)(citing *Vanadium Corp. of Am. v. Fidelity Deposit Co. of Md.,* 159 F.2d 105 (2d Cir.1947)). If a party frustrates or "somehow blocks" the occurrence of a condition precedent, then the condition is excused:

> It is a well settled and salutary rule that a party cannot insist upon a condition precedent, when its nonperformance has been caused by [herself].....The doctrine is purely one of waiver; active conduct of the conditional promisor preventing or hindering the fulfillment of the condition eliminates it and makes the promise absolute.

*Cross & Cross,* 886 F.2d at 501–02 (internal quotations and citations omitted); *see also Michael Kors Co. v. Compagnia Internazionale Abbigliamento S.p.A.,* 93 Civ. 8127, 1996 WL 509725, *4 (S.D.N.Y. Sept. 9, 1996). This principle is similarly applicable in the context of a contract that conditions payment on one party's "satisfaction":

> The duty of good faith and fair dealing that is usually imposed requires at least that a party do nothing to prevent the occurrence of a condition of that party's duty. Thus, if a party has conditioned a duty to pay on honest satisfaction with the other party's performance, the condition is excused if the party to be satisfied refuses to look at the performance.... Such improper action would amount to a breach that would excuse the condition and make the duty to pay unconditional.

Farnsworth, Contracts § 8.6 at 544–45 (3d ed.1999) (footnotes omitted).

 Here, both MetLife and plan participants have reciprocal obligations to bring about or, at minimum, to not frustrate the occurrence of the condition precedent, namely MetLife's satisfaction with the participant's proof of disability. This

**24.** Imposing a standard of good faith upon a plan fiduciary such as MetLife merely expands upon the fiduciary duties already set forth in the statute. *See* 29 U.S.C. § 1104.

means that participants are required to submit adequate proof of disability such as medical records and reports. Any failure by a participant to submit the requisite materials impairs MetLife's ability to assess that participant's entitlement to benefits and constitutes a breach of good faith under the Plan. In that case, the breaching participant cannot be heard to complain about any delay in the payment of her benefit nor may she receive interest on any delay in payments caused by her own failure to submit an adequate claim.

 Assuming, however, that a plan participant submits appropriate materials in support of her application for benefits, MetLife is obligated to consider those materials in good faith. If MetLife ignores the materials or fails to seriously consider their substance, then MetLife has breached its covenant of good faith and the condition precedent—MetLife's satisfaction—is excused. *See Cross & Cross,* 886 F.2d at 501–02. MetLife's duty to pay benefits effectively becomes unconditional and absolute. *See id.* Benefits are no longer "due" when MetLife is satisfied. Rather, they are "due" at the time MetLife should have afforded the participant's complete, nonfrivolous application good-faith consideration. Interest on the due and unpaid benefits would accrue accordingly.[25]

Not only does imposition of an implied term of good faith comport with the policies underlying ERISA, it also prevents unjust enrichment of both parties. Consider the following scenario. A plan participant submits a complete and nonfrivolous application for benefits in June 1994, but MetLife fails to consider it in good faith. Instead, Metlife rejects the participant's application and subsequent appeal. Four years later, after the participant hires an attorney and submits several additional appeals, MetLife reverses its decision and pays retroactive benefits. Unless MetLife is required to pay some amount of interest as a result of its violation of the

covenant of good faith, MetLife and the Plan would be unjustly enriched at the expense of the participant.

Conversely, assume that a plan participant makes a claim for benefits but fails to submit adequate supporting documentation. Not only is MetLife unable to accurately assess the validity of the participant's claim for benefits, but it may be forced to incur great administrative expense in processing and investigating the incomplete claim. In that situation, MetLife would not be unjustly enriched. Indeed, if interest were awarded, the participant would be unjustly enriched by failing to file appropriate materials, causing MetLife to expend additional funds in processing the participant's claim and then receiving interest for the delay she herself created.

 Unfortunately, plaintiff can find no refuge in the reasoning of *Fotta* or in this Court's holding regarding the implied duty of good faith, because both contemplate an individualized evaluation of the facts, allegations and equities surrounding each case. As the Third Circuit expressly stated:

> Because the remedy we recognize here is equitable in nature, *its award involves an exercise of judicial discretion.* And, like other equitable remedies, it is subject to equitable defenses such as laches
> . . .

*Fotta,* 165 F.3d at 214 (emphasis added). In fact, the *Fotta* court did not reverse the district court's dismissal of the plaintiff's claim, rather it remanded the case "for the district court to exercise its discretion." *Id.*

A class action suit does not allow for the individualized treatment mandated by *Fotta* or by any claim for interest based upon a breach of good faith. As pleaded, the Complaint includes no allegations regarding the facts or equities of plaintiff's case,

---

25. Indeed, once benefits are "due" and unpaid, plaintiff's requested implied term of interest for late payment applies. *See supra* Part III.A.2.

let alone the circumstances surrounding the delay of benefits to the other purported class members. Specifically, the Complaint gives no indication as to who caused the delay in payment or whether such delay was a result of bad faith by either party. Instead, the Complaint merely calls for an automatic award of interest to any MetLife participant who received retroactive disability payments after a period of delay.[26] An automatic award of interest is contrary to both the language and policy of ERISA. Not only does it ignore the requirement that equitable relief be premised on an underlying breach, but it favors the plan beneficiary over the plan which is antithetical to ERISA's goals. As pleaded, the Complaint does not allow for a case-by-case evaluation of fault, good faith or the equities. Even construing the allegations of the Complaint in the light most favorable to plaintiff, she cannot maintain a claim for interest under ERISA. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 98 Civ. 1241, 1999 WL 554591, *8–10 (E.D.Pa. June 30, 1999)(dismissing class action claim for interest on delayed benefit payments finding such a claim "unsuitable for class treatment because, as required under *Fotta*, [the court] must examine the facts surrounding the specific delay in benefit payments at issue in each separate case.").

### C. Claim IV: Attorneys' Fees

■ Claim IV seeks reasonable attorneys' fees pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).[27] In the Second Circuit, the decision to grant attorneys' fees under section 502(g)(1) requires consideration of the following five factors:

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). Here, an evaluation of these five factors mitigates against any award of attorneys' fees. In particular, there is no allegation or evidence of "culpability or bad faith" on the part of MetLife. Moreover, for all the reasons set forth above, the "merits" of plaintiff's position—as pleaded—are outweighed by the merits of defendant's position. Similarly, because I am dismissing plaintiff's action, no "common benefit" has been conferred. Accordingly, plaintiff's request for attorneys' fees is denied.

### IV. Leave to Amend

Because I find that plaintiff cannot, under any circumstances, maintain a class action for interest on delayed benefit payments, her class action Complaint is dismissed without leave to amend. *See Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) (leave to amend should not be granted where amendment would be futile). However, the Complaint is dismissed without prejudice which means that plaintiff may bring a new action against defendant in her individual capacity, presuming of course that she can

---

**26.** As defendant argues persuasively in its brief,

> Although the [Complaint] alleges that there was a delay between the onset of plaintiff's disability and the award of benefits, and thus that there was a period of disability for which benefits were awarded retroactively, plaintiff's claim for interest is not premised on establishing MetLife's responsibility for that delay. Instead plaintiff contends that interest is automatically available, not only to her, but to all participants of MetLife-insured [Long Term Disability plans] who receive[d] a retroactive award.

> Def. Mem. at 1–2.

**27.** Section 502(g)(1) provides: "In any action under this subchapter ... by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

credibly make out the elements of such a claim.

## V. Conclusion

For the foregoing reasons, defendant's motion to dismiss the class action complaint is granted. The Clerk of the Court is directed to close this case.

SO ORDERED.