William L. CLAIR and John D. O'Malley, for themselves and for all others similarly situated, Plaintiffs–Appellants,

v.

HARRIS TRUST AND SAVINGS BANK, et al., Defendants–Appellees.

No. 98–2334.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1999.

Decided Aug. 10, 1999.

Clinton A. Krislov (argued), Krislov & Associates, Chicago, IL, for Plaintiffs–Appellants.

Nancy G. Ross (argued), McDermott, Will & Emery, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.

POSNER, Chief Judge.

This is a class action suit under ERISA complaining about delay in the payment of benefits to which the members of the class were entitled by their employer's retirement plan. The defendant bank has a defined-contribution retirement plan. The contributions that the employer and the employee make are deposited in an individual account of the employee and he decides how to invest it. When he retires he receives the current market value of the investments in his account as of the last day of the quarter preceding his retirement. That day is the "settlement date," and the plan provides that the benefits will be paid to the employee "within a reasonable time after his settlement date, but not later than 60 days after (a) the end of the plan year in which his settlement date occurs, or (b) such later date on which the amount of the payment can be ascertained by the committee [that administers the plan]." The settlement date *is* the end of the plan year for a retiring employee, and so, with the exception of the qualification in (b), the plan entitles the employee to receive his benefits within a reasonable time after the settlement date that is not to exceed 60 days.

The bank's practice is to pay the benefits 45 days after the settlement date and the plaintiffs complain that this is unreasonably long—that the bank could easily pay within 3 days. They point out that the plan does not say that the benefits will be paid 45 days, or no more than 60 days, after the settlement date; it says they must be paid within a "reasonable time"— 45 days is nowhere mentioned in the plan itself and 60 days is just the outer limit. If payment is made after 60 days, the plan cannot defend on the ground that it was reasonable to take longer, unless it can squeeze itself into the exception in (b) for cases in which for some reason it is impossible to determine the value of the employee's share of the plan on the settlement date, and this is not claimed to be the situation here.

The district court dismissed the suit on the basis of the defendants' argument that the plaintiffs lack standing to complain under ERISA about this alleged violation of the plan because, when they received the full balance in their retirement ac-

counts as determined on the settlement date—which they did, albeit 45 days after that date—they ceased to be participants in the plan. ERISA permits only "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan," ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and only a "participant, beneficiary, or fiduciary" to obtain (so far as relevant to this case) "appropriate equitable relief . . . to redress . . . violations [of] the terms of the plan." § 502(a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i).

■ The term "participant" has been interpreted to include former employees "who have 'a colorable claim' to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978–79 (7th Cir.1999); *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 789–91 (7th Cir.1996). These cases involved section 502(a)(1)(B), but we cannot think of any reason why "participant" or "beneficiary" would be defined differently under (3)(B) or why, if the plan had cashed the plaintiffs out at a smaller benefit than they were due under the plan, they could not have sued as plan beneficiaries as well as participants (several cases assume they could have, *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1018 (7th Cir.1998); *Fotta v. Trustees*, 165 F.3d 209 (3d Cir. 1998); *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196 (1st Cir. 1997)), since the plan designated them as the beneficiaries. We cannot see, incidentally, what difference it makes under which classification they sue. *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir.1999), and *Smith v. Provident Bank*, 170 F.3d 609, 616 (6th Cir.1999), assume there is none.

■ These plaintiffs, however (and the rest of the class, which consists of similarly situated employees of the bank), do not seek unpaid benefits. Their complaint is that their benefits were not paid in a timely fashion and as a result they lost the time value of the money. They want the interest they could have earned had they been paid the money in a timely fashion and invested it, but interest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under section 502(a)(1)(B). E.g., *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Harsch v. Eisenberg*, 956 F.2d 651, 654–56 (7th Cir.1992); *Turner v. Fallon Community Health Plan, Inc., supra*, 127 F.3d at 198–200. Their argument that benefits include interest on benefits when the benefits are paid late is inconsistent with the principle that benefits payable under an ERISA plan are limited to the benefits specified in the plan. E.g., *Massachusetts Mutual Life Ins. Co. v. Russell, supra*, 473 U.S. at 148, 105 S.Ct. 3085; *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992); *Hein v. FDIC*, 88 F.3d 210, 215 (3d Cir.1996). The plan freezes the amount of benefits as of the settlement date and makes no provision for interest on that amount however long the payment of the benefits is delayed.

■ The plaintiffs also sued under section 502(a)(3)(B), however, which authorizes suits to redress plan violations, as distinct from suits to recover unpaid benefits. In failing to give any weight to the difference between the language of the two sections, the district court may have been misled by the passage we quoted earlier from *Firestone*—that the "participants" (and, we have added, the "beneficiaries") entitled to sue under ERISA's enforcement provisions include former employees "who have 'a colorable claim' to vested benefits." The Court was talking about who may bring a suit *for benefits*, not whether someone who would be entitled to bring such a suit if he were seeking that relief could sue for other relief, which section 502(a)(3)(B) plainly shows he could. See *Varity Corp. v. Howe*, 516 U.S. 489,

515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Fotta v. Trustees, supra,* 165 F.3d at 213–14. The district court may also have been misled by the principle that ERISA does not entitle a plan participant or beneficiary to seek damages (other than unpaid benefits) for a violation of the terms of the plan, *Massachusetts Mutual Life Ins. Co. v. Russell, supra,* 473 U.S. at 144–47, 105 S.Ct. 3085; *Harsch v. Eisenberg, supra,* 956 F.2d at 654–60; *Turner v. Fallon Community Health Plan, Inc., supra,* 127 F.3d at 198–200, and the plaintiffs here are seeking money. But not all monetary relief is damages. Equity sometimes awards monetary relief, or the equivalent, and restitution is both a legal and an equitable remedy that is monetary yet is distinct from damages. More on this shortly.

The defendants' position would have the odd implication that if the settlement date were June 30, 1990, and the bank did not cut a check to the retiring employee until July 1, 1991, the employee would have no redress, since he would have received his full plan benefits, albeit ten months after the last date on which he was entitled to receive them under the terms of the plan. The violation of the plan would be plain, but there would be no remedy. Yet if, realizing that this was his employer's policy, the employee had sought an injunction against it before he retired—that is, at a time when he was indisputably a participant and beneficiary—he would have been entitled to relief by the second statutory provision that we quoted, section 502(a)(3)(B), or possibly by the first, (1)(B) (see *Massachusetts Mutual Life Ins. Co. v. Russell, supra,* 473 U.S. at 147, 105 S.Ct. 3085), instead (see *Varity Corp. v. Howe, supra,* 516 U.S. at 515, 116 S.Ct. 1065) or as well, even though (1)(B) does not refer to equitable relief. If, however, the policy was new or was somehow concealed, injunctive relief, though authorized, would be infeasible, leaving (if the defendants' jurisdictional argument is correct) a big gap in ERISA's remedial scheme, which ERISA's very broad preemption provision, 29 U.S.C. § 1144; *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487–90 (7th Cir.1996), would probably prevent state law from filling.

■ ERISA confines the right to relief to participants, beneficiaries, and fiduciaries because they are the classes of person that ERISA is concerned about. The plaintiffs here claim to have been stiffed in their capacity as participants, and since former employees retain participant status, these plaintiffs are within the scope of section 502—but only if they are seeking *equitable* relief, since the only nonequitable relief authorized by section 502 is a suit for unpaid benefits and we have seen that this suit cannot be so characterized. The plaintiffs argue that they are seeking restitution of the wrongful gain that the plan obtained by having the interest-free use of money rightfully theirs under the terms of the plan, and that restitution is an equitable remedy. It is not; as explained in another case decided today, it is a legal remedy when sought in a case at law (for example, a suit for breach of contract) and an equitable remedy when sought in an equity case. *Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 710 (7th Cir.1999). As we also explain in *Health Cost Controls,* however, restitution is equitable when sought by a person complaining of a breach of trust, as these plaintiffs are.

■ What is more, the plaintiffs are asking in the alternative that the court impress a constructive trust on the interest that the defendants earned on benefits withheld in violation of the terms of the plan. A constructive trust, as we point out in *Health Cost Controls,* is an equitable remedy commonly sought and granted in cases of unjust enrichment. It operates much like restitution—indeed it is sometimes referred to as a restitutionary remedy, 1 Dobbs, *supra,* § 4.3, p. 587—but it is securely equitable because it is never a legal remedy. If A wrongfully appropri-

ates money or other property belonging to B, the court can order A to hold the property in trust for B. That is the nature of the relief sought by the plaintiffs in this case. *Health Cost Controls* holds that such relief is squarely within the scope of section 502(a)(3)(B).

So the plaintiffs are entitled to maintain this suit after all.

■■■ The question on the merits is whether the phrase "within a reasonable time" not to exceed 60 days entitles the plaintiffs to litigate the issue whether the defendants could have paid the benefits due the plaintiffs within a shorter period, perhaps as little as 3 days. As a matter of ordinary language, the plaintiffs have a case. Read literally, the plan grants participants two entitlements: payment within 60 days, no matter how difficult it is for the plan to comply with this deadline (provided only that the amount due the participant as of the settlement date can be calculated then); and payment within the shortest period in which payment would be reasonable. The summary plan description eliminates the second entitlement; but when plan and summary plan description are inconsistent, it is the former that controls unless the employee has relied on the latter. *Health Cost Controls of Illinois, Inc. v. Washington, supra,* at 711–12.

The literal reading of the plan provision would be absurd, however. It would mean that the authors of the plan had invited participants (more realistically, in view of the rather small stakes for any individual employee, class action lawyers) to litigate over how soon within the 60–day period the employer could "reasonably" be required to pay. A searching inquiry into the actual and feasible accounting practices of the plan, into the cost and configuration of alternative software packages for calculating benefits, and into alternative methods electronic and otherwise of transferring funds to participants in the least amount of time would be incited. Although in some settings "within a reason-

able time" can be given a pretty definite meaning through the methods of litigation, e.g., *Savasta v. 470 Newport Associates,* 82 N.Y.2d 763, 603 N.Y.S.2d 821, 623 N.E.2d 1171 (1993) (per curiam); *Chemtrol Adhesives, Inc. v. American Mfrs. Mutual Ins. Co.,* 42 Ohio St.3d 40, 537 N.E.2d 624, 636 (1989); *Kaplan v. Shure Bros., Inc.,* 153 F.3d 413, 423 (7th Cir.1998); *In re D.L.,* 299 Ill.App.3d 269, 233 Ill.Dec. 689, 701 N.E.2d 539, 541–42 (1998), this is not one of them. The only long-run effect of the interpretation for which the plaintiffs are contending would be deletion of "within a reasonable time" from, and the fixing of 60 days (the maximum allowed by the Internal Revenue Service for pension plans of this sort, 26 U.S.C. § 401(a)(14); Treas. Reg. § 1.401(a)-(14)(a)) as the only deadline in, all ERISA retirement plans. No one would benefit from such a change. It is apparent that what the authors of the plan meant was that the plan reserved the right to wait the full 60 days allowed by the IRS to make the payment. There is no suggestion that anyone was fooled by the reference to reasonableness.

The defendants have not asked us to reach the merits if we disagree (as we do) with their stubborn defense of the district court's erroneous jurisdictional rulings. But as in *Anweiler v. American Electric Power Service Corp.,* 3 F.3d 986, 993 (7th Cir.1993), no purpose would be served by remanding the case to enable that court to have a pass at the merits. The plaintiffs' position on the merits borders on the frivolous. The district judge was therefore right to dismiss the suit but we modify his order to place decision on the merits of the plaintiffs' suit rather than on the ground that they had no standing to sue.

MODIFIED AND AFFIRMED.