Helen DUNNIGAN, on behalf of herself and all others similarly situated, Plaintiff–Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.

Docket No. 00–7399.

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 2000.

Decided Jan. 9, 2002.

Scott M. Riemer, Michael E. Schoeman, on the brief, Schoeman, Updike & Kaufman, LLP, New York, NY, for Appellant.

Myron D. Rumeld, Proskauer Rose LLP, Lawrence Wolff, Allan M. Marcus, Metropolitan Life Insurance Company, New York, NY, on the brief, for Appellee.

Gregory G. Katsas; Gregory A. Castanias, Michael S. Fried, of counsel, Jones, Day, Reavis & Pogue, Jeffrey L. Gabardi, Health Insurance Association of America, Washington, DC, on the brief, for Amicus Curiae Health Insurance Association of America.

Mary Ellen Signorille, AARP Foundation Litigation, Melvin Rodowitz, AARP, Washington, DC, Paula Brantner, National Employment Lawyers Association, San Francisco, CA, on the brief, for Amici Curiae American Association of Retired Persons and National Employment Lawyers Association.

Before JACOBS, LEVAL, and KATZMANN, Circuit Judges.

LEVAL, Circuit Judge.

This is an appeal by the plaintiff, Helen Dunnigan, the beneficiary of a long-term disability insurance policy issued by defendant Metropolitan Life Insurance Company (MetLife), from the dismissal of her complaint by the United States District Court for the Southern District of New York (Scheindlin, *J.*). Plaintiff's complaint asserted a claim, personally and on the behalf of all other similarly situated disabled participants in MetLife disability plans, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, to recover interest on benefits paid subsequent to the date when the participant was entitled to receive such payments. MetLife moved to dismiss the complaint, arguing that independent actions for interest on

delayed benefit payments cannot be maintained under ERISA where benefits are awarded after internal administrative review and not through litigation. The district court rejected MetLife's contentions, concluding that the language and policy of ERISA, taken together with common law contract principles, can in some instances support an action to recover interest on delayed benefit payments. Under the district court's view, however, an essential element of such a claim is bad faith on the part of the insurer. Because the complaint did not allege bad faith on MetLife's part, the court found that it failed to assert a claim upon which relief could be granted. The court denied the application for class certification and dismissed the complaint without prejudice to plaintiff's reinstating a new suit.

In our view, the complaint adequately pleaded entitlement to relief. We vacate the judgment and remand.

## BACKGROUND

### I. Factual Background

#### A. The Complaint

The allegations of Dunnigan's complaint include the following:

Around October 1990, Dunnigan began employment as an auditor at the New York office of Deloitte & Touche (Deloitte), the accounting firm. Deloitte offered its employees the opportunity to participate in a long-term disability policy issued by defendant MetLife (the Deloitte Plan or the Plan). Dunnigan enrolled in the Plan.

In March 1994, Dunnigan was diagnosed with Chronic Fatigue Syndrome and was rendered totally disabled by the disease. On July 11, 1994, she applied to MetLife for long-term disability benefits. MetLife

denied the application by letter dated November 15, 1994, approximately 125 days after her request. The complaint notes that MetLife's denial of Dunnigan's application came after the expiration of the 90–day period specified by the Secretary of Labor's regulations for such determinations, formerly 29 C.F.R. § 2560.503–1(e)(3) (2000).[1]

On February 15, 1995, Dunnigan submitted an appeal to MetLife. Approximately 165 days later, on August 2, 1995, MetLife denied the appeal and stated that no further appeals were allowed. The complaint states that MetLife denied the appeal after the expiration of the time periods specified by the Secretary of Labor's regulations. See 29 C.F.R. § 2560.503–1(h)(1)(i) (2000).[2] The complaint also alleges that MetLife did not inform Dunnigan of any special circumstances requiring an extension of these time periods.

Dunnigan then hired a lawyer, and over the next three years, submitted additional appeals to MetLife through counsel; all were denied until the last appeal, which she filed in November 1998. For reasons not explained in the complaint, on February 10, 1999, four years and eight months after the submission of Dunnigan's claim, MetLife reversed its prior denials and granted her retroactive benefits for the period from June 23, 1994, through January 31, 1999. The benefits were tendered as a lump sum payment calculated by multiplying Dunnigan's monthly benefit provided by the Plan by the number of months (55) she had been eligible for benefits. The payment did not include interest on account of the delay in making payment. MetLife informed Dunnigan's lawyers that "regardless of the factual circumstances, MetLife never pa[ys] interest on back benefits except when ordered to do so by a court of law."

Construed in the light most favorable to Dunnigan, as required in judging a motion under Fed.R.Civ.P. 12(b)(6), the complaint alleges that MetLife's payment of benefits to Dunnigan was made after she became entitled to receive the benefits. It goes on to assert a claim not only on Dunnigan's behalf but also on behalf of a class of similarly situated disabled participants in MetLife long-term disability plans whose payments of benefits were not made until after the participant's date of entitlement to receive the benefits, but without interest to offset the lost value caused by the delay.

The complaint recites four claims for relief.

- Count I asserts a claim under ERISA § 502(a)(1)(B), which authorizes a plan beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). It claims that Dunnigan and the plaintiff class were entitled under the terms of MetLife's plans to interest on benefits payments that were made after the individual's entitlement to receive such payments.

A decision [on review] ... shall not ordinarily be made later than 60 days after the plan's receipt of the request for review, unless special circumstances ... require an extension ..., in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.

1. 29 C.F.R. § 2560.503–1(e)(3) provides in pertinent part:
   [The] period of time [for giving notice of decision on a claim] will be deemed to be unreasonable if it exceeds 90 days after receipt of the claim by the plan, unless special circumstances require an extension of time for processing the claim.

2. 29 C.F.R. § 2560.503–1(h)(1)(i) provides in pertinent part:

- Count II asserts a claim under ERISA § 502(a)(3)(B), which permits a plan beneficiary to seek an injunction or "other appropriate equitable relief" for violations of ERISA or the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3)(B). It alleges that Met-Life breached its fiduciary duties and was unjustly enriched by the delay in making payment. Specifically, this count requests: (1) a declaration that, among other things, a constructive trust was established in the amount of the interest that MetLife failed to pay on delayed benefits, and (2) restitution equal to the interest on late benefits payments and/or disgorgement of any profits MetLife earned by withholding interest on benefits.

- Count III alleges that MetLife violated ERISA and its fiduciary duties by rendering disability eligibility determinations beyond the periods specified in 29 C.F.R. § 2560.503–1 (2000), which governs the time within which a plan must rule on claims for benefits. Like Count II, Count III demands "appropriate equitable relief" under ERISA § 502(a)(3)(B).

- Count IV requests attorneys' fees and costs pursuant to ERISA § 502(g)(1). 29 U.S.C. § 1132(g)(1).

## B.  Proceedings Below

After answering the complaint, MetLife moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6),[3] appending a copy of the certificate of insurance setting forth the terms of the Deloitte Plan. MetLife's motion characterized the claims for interest as in fact claims for extracontractual, compensatory money damages, which are generally not recoverable under ERISA. *See Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir.1993).

While accepting that payments of benefits have a time-value component that is lost when those benefits are not paid until after they are due, the district court rejected Dunnigan's assertion that interest on delayed payments was an explicit or implied term of the Plan, whether under ordinary principles of contractual interpretation or under federal common law. Furthermore, because the Deloitte Plan, submitted in support of defendant's motion, requires that the claimant's written proof of claim be "satisfactory to [MetLife]," the court reasoned that there was no ascertainable date when the payments were due because MetLife was entitled to time to assess the proofs to determine whether they were satisfactory. The court therefore determined that interest was not payable "under the terms of the Plan," as claimed in Count I under § 502(a)(1)(B). *See Dunnigan v. Metropolitan Life Ins. Co.,* 99 F.Supp.2d 307, 316–19 (S.D.N.Y. 2000).

The district court concluded, however, that the duty of good faith and fair dealing implied in every contract applies with equal force to ERISA plans. *Id.* at 323–24. The court reasoned that, if the complaint had asserted that the payment delays resulted from breach of MetLife's duty of good faith and fair dealing, it would have pleaded a cognizable claim to equitable relief under ERISA § 502(a)(3)(B). Because the complaint did not assert that MetLife had acted in breach of its duty of good faith and fair dealing, the district court concluded Count II failed to state an actionable claim for

---

**3.** Because defendant answered the complaint before moving to dismiss, the district court construed MetLife's Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings.

equitable relief under § 502(a)(3)(B). The court dismissed Count III for the same reasons. The court also concluded that Dunnigan's claim could not be brought as a class action, because the facts relating to breach of a duty of good faith would be likely to differ from case to case so that there would be little commonality of issues of fact. *Id.* at 325–26. Finally, the court denied plaintiff's request for attorneys' fees. *Id.* at 326.

This appeal followed.

## DISCUSSION

### I. Interest as "Appropriate Equitable Relief" Under ERISA § 502(a)(3)(B)

We begin with Count II of the complaint, which seeks interest as equitable relief under § 502(a)(3)(B). The district court believed that interest could be awarded as equitable relief under this section, but only if plaintiff alleged bad faith—a breach of an implied duty of good faith and fair dealing. We agree with the district court that an award of interest is contemplated by § 502(a)(3)(B), but disagree that a showing of bad faith is required.

### A. Whether an Award of Interest Can Constitute Equitable Relief

ERISA § 502(a) provides:

A civil action may be brought—

. . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan

29 U.S.C. § 1132(a). The Supreme Court has described this section as a "catchall" provision that acts as "a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). This provision, however, has been construed generally not to provide for an award of extracontractual money damages. *See Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir. 1993).

The parties disagree whether the interest plaintiff seeks amounts to impermissible extracontractual money damages or appropriate equitable relief. Referring to our precedents in *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir.1999), and *Lee,* MetLife argues that the district court erred by characterizing Dunnigan's claim as one for equitable relief.

In *Lee,* participants in a self-insured ERISA plan brought suit under § 502(a)(3)(B) against the administrator of a plan sponsored by another company to obtain medical costs that were covered but not paid due to the bankruptcy of the plan's sponsor. We affirmed the dismissal of the complaint because we viewed the relief sought as extracontractual money damages. We reasoned that the defendant did not breach any statutory duty to inform plaintiffs that the plan was self-funded, as that responsibility belonged to the plan's bankrupt sponsor. 991 F.2d at 1011. We noted further that "[m]oney damages are generally unavailable under [§ 502(a)(3)]" because the plain language and legislative history of ERISA indicated that Congress did not contemplate such an award. *Id.* at 1011. Although *Lee* did not speak to the question here at issue, some district courts relying on *Lee* have concluded that an award of interest on late payments of benefits is categorically barred under § 502(a)(3)(B), although not necessarily barred in the form of prejudgment interest. *See, e.g., Walsh v. Eastman Ko-*

*dak Co.,* 53 F.Supp.2d 569, 574–75 (W.D.N.Y.1999) (dismissing claim for interest on payment delayed 25 days); *DeVito v. Pension Plan,* 975 F.Supp. 258, 270–71 (S.D.N.Y.1997) (dismissing claim for interest additional to 5% interest awarded by plan for late payment of benefits).

In *Strom,* a widow sued to recover supplemental insurance coverage her husband had requested but which did not become effective before her husband's death due to the employer's negligence. We found that, although plaintiff could not recover under the explicit terms of the plan, she could recover under § 502(a)(3)(B) if she could prove that the employer, who was a fiduciary, breached its ERISA fiduciary duty. 202 F.3d at 144, 150. We reasoned that the plaintiff sought "make whole relief," which would constitute equitable relief within the meaning of the statute, to redress such a breach of fiduciary duty.

■ The *Strom* court analogized the relief plaintiff requested to an award of backpay in other employment-related statutes. *See Strom,* 202 F.3d at 146 (noting that a backpay remedy is within the provisions of the National Labor Relations Act and Title VII of the Civil Rights Act of 1964 referring to appropriate equitable relief). Because Congress's adoption of ERISA "did not occur in isolation," the *Strom* court reasoned that the use of "other appropriate relief" in ERISA indicated that a make-whole remedy was permitted under § 503(a)(3)(B). *Id.* at 147. Like backpay, we concluded, plaintiff's remedy in *Strom* only sought to "eliminate the direct economic effect of an alleged violation of the statute," and did not seek any of the other subjects of compensation found in traditional tort damages. *Id.*

■ We disagree with MetLife's contention that, under those precedents, interest on late payments must be seen as an award of noncontractual compensatory damages falling outside the scope of § 502(a)(3)(B)'s remedies. As the Seventh Circuit noted in *Clair v. Harris Trust & Savs. Bank,* 190 F.3d 495, 498–99 (1999) (Posner, *C.J.*), in considering the same question, the mere fact that money is sought does not necessarily classify the relief as damages, rather than equitable relief. "Equity sometimes awards monetary relief. . . ." *Id.* at 498. Where interest is sought to make the plaintiff whole by eliminating the effect of a defendant's breach of a fiduciary duty, we see no reason why such interest should not be deemed "appropriate equitable relief" within the scope of § 502(a)(3)(B). The Third Circuit has reached a similar conclusion. *See Fotta v. Trustees of the United Mine Workers,* 165 F.3d 209, 213 (3d Cir. 1998). When benefits are paid only after the date on which the beneficiary was entitled to receive them under the terms of the plan, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified). An award of interest in such circumstances serves as an equitable make-whole remedy. We accordingly agree with the district court's rejection of MetLife's contention that interest may never be awarded as an equitable remedy under § 502(a)(3)(B).

*B. Whether a Showing of Bad Faith is Required to Recover Interest on Delayed Benefits*

■ Although the district court accepted that interest could constitute "appropriate equitable relief" under § 502(a)(3)(B), it ruled that such relief could not be awarded without a showing that the defendant had acted in bad faith. We see no reason why a showing of bad faith is required in order for a court to grant interest as equitable relief under

§ 502(a)(3)(B). The opinions of the Third and the Seventh Circuits have recognized that interest can be appropriate, equitable, "make whole" relief under § 502(a)(3)(B), without any requirement that a plaintiff allege or prove bad faith on the part of the defendant. *See Clair* 190 F.3d at 498–499 (finding request for interest on delayed benefit payments to be appropriate equitable relief under § 502(a)(3)(B) on either theory of restitution or theory of constructive trust); *Fotta,* 165 F.3d at 213 (3d Cir.1998) (award of interest on delayed benefits is equitable relief under § 502(a)(3)(B)). Here, Dunnigan's complaint alleges that she was entitled to disability benefits, and that the payment of those benefits was delayed nearly five years. Construing the complaint in the light most favorable to plaintiff, it asserts that payment of her benefits was unreasonably delayed and made long after she was entitled to receive them. Such a delay enriches the fiduciary at the expense of the beneficiary. Unless such a delay is justified, we see no reason why it does not constitute a breach of fiduciary duty. Dunnigan adequately pleaded that she was entitled to timely payment of the benefits, and that the payments were unjustly delayed. She should not be required to plead anything more. *See Clair,* 190 F.3d at 498 (award of interest is cognizable claim where plaintiffs seek "restitution of the wrongful gain that the plan obtained by having the interest-free use of money rightfully theirs under the terms of the plan"). We therefore vacate the dismissal of plaintiff's claim for interest as equitable relief under § 502(a)(3)(B).[4]

## II.  Interest as a Plan Term

The district court rejected the allegations of Count I of the complaint—that interest on delayed benefits payments was a term of the Plan—because of two features of the Plan. First, the court found significant the fact that the Plan contains no specific mention of interest. Second, the court thought the requirement, listed in the certificate of insurance, that proof of disability must be "satisfactory to [MetLife]" made it difficult or impossible to determine a plaintiff's date of entitlement to benefits, so that the payment of benefits nearly five years after plaintiff's submission of her proofs was not necessarily late, and even if it was, the court would have difficulty determining when payment was due.

We believe the district court exaggerated this concern. In many instances, the plan administrator would not need to delay payments to ascertain whether the proof of claim of disability was satisfactory. The Plan itself provides an "Elimination Period" of ninety consecutive days of disability before which no claims are payable. If the claim and proofs are filed during the Elimination Period, it provides a buffer during which the claims and proofs may be evaluated without requiring any delay in payment.

And if the claim and proofs are submitted either after, or near the end of, the Elimination Period so that the Plan administrator might require some further time to determine whether the proofs are satisfactory, a court could with relative ease determine the duration of a *reasonable* period thereafter, following which an interest obligation might arise. MetLife does not contend that the timing of its ultimate coverage decision depended on some change in circumstance over the intervening years, such as the submission of addi-

---

**4.** Even if we agreed with the district court that Dunnigan's complaint was deficient, we would think the district court erred in dismissing the action without permitting Dunnigan the opportunity to replead.

tional information, a change in diagnosis, a change in coverage, policy or procedure, or a change in medical knowledge. Absent good cause shown by the Plan administrator justifying a longer period, it is arguable that the ninety-day period specified by the regulations of the Secretary of Labor, formerly 29 C.F.R. § 2560.503–1(e)(3), for the making of such determinations, defines the duration of the reasonable period during which the Plan is not chargeable with an interest obligation.[5]

We recognize that courts have frequently stated that the remedy of § 502(a)(1)(B) of "benefits due ... under the Plan" may be invoked only to recover benefits under the explicit terms of the plan, see, e.g., Clair, 190 F.3d at 497 ("[I]nterest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under section 502(a)(1)(B)."). On the other hand, it seems difficult to justify a distinction that would make an explicitly stated right recoverable while an implicit right was not. A benefit implicitly due under the terms of a plan would seem to be a "benefit due ... under the terms of his plan."

In any event, we need not resolve the problem in this case. Because under § 502(a)(3)(B) we have determined that Dunnigan may recover the interest due her by reason of the Plan's unreasonable delay, if any, in paying her benefits, it makes no difference whether she also has the same entitlement under § 502(a)(1)(B). For the same reason, the Third Circuit in

*Fotta* declined to resolve whether an implicit entitlement to interest was cognizable under § 502(a)(1)(B). *See Fotta*, 165 F.3d at 213 & n. 1 (refusing to reject § 502(a)(1)(B) as "providing a possible statutory bas[is]" for a claim for interest, but declining to reach the issue in light of decision that § 502(a)(3)(B) permits recovery of interest).

### III. Class Certification

■ The district court found that this suit could not be sustained as a class action because the commonality and typicality requirements of Rule 23 could not be met. *Dunnigan*, 99 F.Supp.2d at 325–26 (citing *Holmes v. Pension Plan*, No. 98–CV–1241, 1999 WL 554591, *8–*9 (E.D. Pa. June 30, 1999), *rev'd on other grounds*, 213 F.3d 124 (3d Cir.2000)). The district court reached this conclusion because of its belief that a breach of a duty of good faith and fair dealing was essential to an award of interest. The court concluded that the need to demonstrate bad faith would require an inquiry into the facts, circumstances, and equities that would differ for each claimant. *See Dunnigan*, 99 F.Supp.2d at 325.

Because we conclude that bad faith is not a prerequisite to an award of interest as an equitable remedy under § 502(a)(3)(B), the district court's conclusion was premised on an incorrect assumption about the governing law. We therefore vacate the court's denial of class certification and remand for reconsidera-

---

5. In *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that a plan's failure to award benefits within the period specified by the Secretary's regulations does not give rise to an independent claim for consequential damages, but rather permits a claimant to consider her claim as having been denied so that she is free to seek judicial review of the denial. The

ruling that an untimely decision does not give the beneficiary an entitlement to consequential damages is not inconsistent with use of the period specified in the regulations as the measure of reasonable delay or with a ruling that unexcused delay can give rise to an obligation to pay interest. As noted in the text, the entitlement to interest is not consequential damages.

tion of that question, as to which we intimate no view.

## CONCLUSION

We vacate the judgement of the district court and remand for further proceedings consistent with this opinion.