Steven BABCOCK, on Behalf of the COMPUTER MANAGEMENT SCIENCES INC., EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST, and himself and all others similarly situated, Plaintiffs,

v.

COMPUTER ASSOCIATES INTERNATIONAL, INC., Jerry Davis, Anthony V. Weight and Computer Management Sciences, Inc. Employee Stock Ownership Plan and Trust as Nominal Defendant, Defendants.

No. CV–00–1648 (ADS).

United States District Court, E.D. New York.

Feb. 25, 2002.

Lowey, Dannenberg, Bemporad & Selinger, P.C. by David C. Harrison, Arthur T. Susman, and Charles R. Watkins, White Plains, NY, for Plaintiff.

Farrell Fritz by John P. McEntee, Uniondale, NY, for Defendants.

## MEMORANDUM OF DECISION
## AND ORDER

SPATT, District Judge.

This action arises out of claims by Steven Babcock ("Babcock" or the "plaintiff") against Computer Associates International, Inc. ("Computer Associates"), Jerry Davis ("Davis"), Anthony V. Weight ("Weight") and the Computer Management Sciences, Inc. Employee Stock Ownership Plan (the "Plan") (collectively, the "defendants"). The plaintiff alleges that the defendants failed to properly follow the terms of the Plan and breached their fiduciary duties to the plaintiff and other similarly situated individuals in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I. BACKGROUND

### A. The Complaint

### 1. The Parties

The following facts are taken from the complaint. The plaintiff was employed by Computer Management Services, Inc. ("Computer Management") which was a Florida Corporation engaged in the business of computer consulting. Computer Associates is a corporation engaged in the business of computer software with its headquarters in Islandia, New York. Davis and Weight are the trustees of the Plan, which is an employee stock ownership plan qualified within the meaning of ERISA.

### 2. Facts

In 1991, the plaintiff began working for Computer Management. In July of 1998, the plaintiff resigned from Computer Management. During his employment at Computer Management, the plaintiff participated in the Plan. The plaintiff is and was a vested participant in the Plan. The main purpose of the Plan was to enable employees to invest on a tax free basis in the stock of Computer Management.

In 1998, Computer Associates acquired Computer Management. Before the acquisition, Computer Management operated and administrated the Plan. After acquiring Computer Management, Computer Associates began operating and administrating the Plan. In March of 1999, the Plan sold all of the Computer Management stock that it held. The defendants then invested the proceeds of the sale in a money market fund, where it has remained ever since.

The complaint alleges that the terms of the Plan permitted the participants to redirect their funds in various alternative investments other than Computer Management stock but that the defendants did not permit such periodic re-directions of investments or create any alternative investments for the participants. The complaint further alleges that the plaintiff was entitled to receive benefits under the Plan after he resigned from Computer Management but that the defendants did not permit him to receive his benefits.

On March 21, 2000, the plaintiff commenced this action. The complaint pleads four causes of action. The first cause of action alleges three theories of liability under 29 U.S.C. § 1132(a)(1)(B). The first theory is that the defendants failed to provide the plaintiff with his benefits in a timely fashion under Section 5.4 of the Plan. The second theory is that the defendants failed to provide the plaintiff with three separate investment options for his accounts as required under Section 4.9 of the Plan. The third theory is that the defendants failed to provide the plaintiff with at least one investment option for his Investment Account under Section 4.10 of the Plan. The Court will address each theory separately.

The second cause of action is a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3)(B) alleging that the defendants failed to abide by the fiduciary duties of ERISA. The third cause of action is a federal common law breach of contract claim alleging that the defendants failed to follow the terms of the Plan. The fourth cause of action is a claim for injunctive relief seeking to require the defendants to operate the Plan in accordance with ERISA and the terms of the Plan.

Presently before the Court is the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendants raise the following arguments: (1) the plaintiff lacks standing to bring the first and second causes of action, in that the plaintiff is no longer a "participant" under ERISA because the defendants have provided the plaintiff with a distribution of his benefits under the Plan; (2) the first and second causes of action fail to state a claim upon which relief can be granted, in that the defendants have properly followed the terms of the Plan; (3) the second cause of action fails to state a claim upon which relief can be granted, in that the damages sought by the plaintiff are not permitted under ERISA; and (4) the third cause of action is preempted by ERISA.

## II. DISCUSSION

### A. Standard

#### 1. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should dismiss the complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Koppel v. 4987 Corp.,* 167 F.3d 125, 127 (2d Cir. 1999); *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

#### 2. Materials Presented Outside the Pleadings

The Second Circuit has stated that:

Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material. *See* Fed. R.Civ.P. 12(b).

*Fonte v. Bd. of Managers of Cont'l Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988). The Second Circuit has strictly enforced "the conversion requirement of Rule 12(b)(6) where there is a legitimate possibility that the district court relied on inappropriate material in granting the motion." *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999). The purpose is to ensure that "courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions...." *Id.*

In a motion to dismiss under Rule 12(b)(6), the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107

(2d Cir.1999); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999).

With their memorandum of law in support of the motion to dismiss, the defendants submit an affidavit from John P. McEntee, Esq. dated October 25, 2000 (the "McEntee Affidavit"). The McEntee Affidavit attaches four exhibits: (1) the complaint in this matter; (2) the Plan and four amendments to the Plan; (3) a copy of the plaintiff's Rollover Election Form under the Plan; and (4) a copy of a check for $442,407.26 dated April 20, 2000 allegedly representing the distribution to the plaintiff of his assets in the Plan. With their memorandum of law in opposition to the defendants' motion, the plaintiff submits an affidavit from Charles R. Watkins, Esq. dated October 27, 2000 (the "Watkins Affidavit"). The Watkins Affidavit attaches a copy of the Plan that Mr. Watkins received from the defendants on December 19, 1999.

With their reply memorandum of law, the defendants submit an affidavit from Walter Johnson, Esq. dated October 30, 2000 (the "Johnson Affidavit") and an affidavit from Clyde Sharman dated September 7, 2000 (the "Sharman Affidavit"). The Johnson Affidavit attaches four exhibits: (1) a letter dated February 22, 1999 from Davis and Weight tendering their resignation as trustees of the Plan; (2) an undated resolution of the Board of Directors from Computer Management accepting the resignation of Davis and Weight; (3) a letter dated March 3, 1999 confirming the appointment of Walter Millsap as successor trustee of the Plan; and (4) an undated resolution of the Board of Directors from Computer Management approving the amendment and termination of the Plan. The Sharman Affidavit states that Mr. Sharman is the Vice–President of Pencor, a service provider responsible for preparing annual reports for the Plan since 1991 and that Pencor allocated 100%

of the assets that were reported by Computer Management to the accounts of the plan participants.

■ With respect to the amendment entitled Third Amendment dated March 15, 1999, submitted by the defendants, the plaintiff challenges the validity of this amendment on the grounds that: (1) no copy was provided to the plaintiff; (2) insufficient evidence exists that the amendment was approved by the Board of Directors; and (3) the participants in the plan have not been given notice of this amendment. Because issues of fact must be resolved before considering the validity of this amendment, a function beyond the scope of review in a motion to dismiss under Rule 12(b)(6), the Court can not consider this amendment in its decision. Moreover, the Court does not consider the additional materials presented in the defendants' exhibits and affidavits because these materials fall outside the pleadings and are not incorporated by reference in the complaint.

The Court declines to convert the defendants' motion to dismiss to one for summary judgment but rather decides the motion on the complaint and the materials incorporated in the complaint by reference. Accordingly, the Court considers in its decision only the complaint, the Plan and the amendments dated December 25, 1993, December 23, 1994 and January 1, 1998. *See Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 140 n. 1 (2d Cir.1999) (stating the benefit plan properly incorporated by reference in the complaint).

## B. ERISA Preempts the Common Law Breach of Contract Claim

ERISA applies to any employee benefit plan established or maintained by any employer engaged in commerce. 29 U.S.C. § 1003(a)(1). Computer Management, a corporation engaged in commerce, estab-

lished and maintained the Plan. Accordingly, ERISA governs the rights and liabilities under the Plan.

■ Congress enacted ERISA as a remedial statute to protect the interests of the beneficiaries of private retirement plans by reducing the risk of the loss of pension benefits. *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir. 1996). "ERISA established a comprehensive federal statutory program intended to control abuses associated with pension benefit plans." *Id.*

In order to achieve national uniformity in the regulation of such plans, ERISA expressly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan [covered by the statute]...." 29 U.S.C. § 1144(a) (emphasis added). Accordingly, common law actions that "relate to" employee benefit plans are preempted by ERISA. *See Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 591 (2d Cir.1993) (stating ERISA preempts state law contract claims pertaining to the denial of benefits under employee benefit plans); *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 9 (2d Cir.1992) (holding state law of general application "relates to" pension plan for preemption purposes, although it had only indirect effect on the plan).

The basis for the claim of common law breach of contract is the defendants' alleged failure to follow the terms of the Plan with respect to the distribution of the benefits and the investment of assets in the Plan. Accordingly, the claim for common law breach of contract "relates to" the Plan. *See Kennedy*, 989 F.2d at 591 (stating the denial of benefits under employee benefit plans "relates to" the plan).

■ Generally, ERISA will not preempt claims that involve fraud or misrepresentation which are not based upon the operation or management of the benefit plan. *See Geller*, 86 F.3d at 23 (holding state law claim for fraud independent of the pension plan's operation or management not preempted). However, here, the plaintiff does not allege misrepresentation or fraud; the plaintiff alleges a breach of contract for failure to abide by the terms and conditions of the Plan. This claim relates precisely to the terms and conditions of the employee benefit plan in dispute. Accordingly, ERISA preempts the claim for common law breach of contact.

Furthermore, the plaintiff cannot shield his claim for breach of contract under the label of federal common law. The Supreme Court has held that courts are to fill in the interstices of ERISA by developing "a federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, the Supreme Court has stated that "[t]he authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 259, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citations omitted).

Moreover, the Supreme Court has stated that "[t]he six carefully integrated civil enforcement provisions found in [§ 1132(a) of ERISA] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Finally, courts have "been extremely reluctant to find that ERISA creates certain causes of action by implication in addition to those enumerated in the statute itself." *UIU Severance Pay Trust Fund v. Local Union No. 18–U*, 998 F.2d 509, 512 (7th Cir.1993).

This Court declines to allow the plaintiff to proceed with his preempted claim for breach of contract under the shield of fed-

eral common law. *See Ludwig v. NYNEX Serv. Co.*, 838 F.Supp. 769, 793 (S.D.N.Y. 1993) (refusing to permit the plaintiff to proceed with preempted claim for breach of contract under the guise of federal common law). Accordingly, ERISA preempts the third cause of action of the complaint and this claim is dismissed.

### C. The Plaintiff has Standing to Bring the ERISA Claims

The civil enforcement provision of ERISA provides that a "participant or beneficiary" of an employee benefit plan may initiate a civil action. 29 U.S.C. § 1132(a)(1)(B). ERISA defines a "participant" as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

The Supreme Court has stated that "[i]n order [for a participant] to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co.*, 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Mullins v. Pfizer, Inc.*, 23 F.3d 663, 667 (2d Cir.1994). Moreover, the Second Circuit has stated " 'that when standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.' " *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 149 (2d Cir.1992) (citing *Pennell v. City of*

*San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988)).

■ In the complaint, the plaintiff alleges that he is and was a vested participant in the Plan and that he was entitled to the benefits under the Plan. The plaintiff further alleges that the terms of the Plan permitted the participants to obtain their benefits upon leaving their employment with Computer Management but that the defendants did not permit the plaintiff to obtain his benefits. These facts, which this Court must accept as true in ruling on a motion to dismiss, sufficiently alleges a "colorable claim" to benefits under the Plan. Accordingly, the plaintiff has standing to bring the ERISA claims.

### D. As to Recovery of Benefits under Section 1132(a)(1)(B)

ERISA provides that "[a] civil action may be brought—by a participant or beneficiary to recover benefits *due to him under the terms of his plan* ...." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). A claim under Section 1132(a)(1)(B) is essentially the assertion of a contractual right under a benefit plan. *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir.1999). Some courts have stated that the remedy for "benefits due ... under a plan" may be used only to recover the benefits explicitly stated in the benefit plan. *See, e.g., Clair v. Harris Trust & Savs. Bank*, 190 F.3d 495, 497 (7th Cir.1999) ("[I]nterest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under ... [Section 1132(a)(1)(B) ]."). However, the Second Circuit has recently stated, *in dicta*, that "[a] benefit implicitly due under the terms of a plan would seem to be a 'benefit due ... under the terms of his plan.' " *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 231 (2d Cir.2002).

### 1. Interest for Delayed Payment of Benefits

Section 5.4 of the Plan provides in pertinent part:

*Distribution Upon Termination of Employment.* With respect to all former Participants whose employment has been terminated for any reason other than retirement, death or total and permanent disability, the Plan Administrator shall instruct the Trustee to cause the entire amount of the vested account of each such former Participant to be paid to the former Participant in a lump-sum distribution no sooner than the occurrence of a one-year break in service with respect to the former Participant in question, and no later than the close of the second Plan year following the Plan Year in which the former Participant's termination of employment occurs. . . .

Plan § 5.4(a)(i). Former Participant is defined as "a Participant who ceases to participate in the Plan as a result of one or more 1 year breaks in service which occur prior to his retirement for reasons other than death or total and permanent disability." *Id.* at 4. Plan Year is defined as "the accounting period of twelve months commencing on January 1 of each calendar year and ending on December 31 of the same calendar year." *Id.* at 11.

The plaintiff resigned in July of 1998. As such, the plaintiff is a former Participant for purposes of Section 5.4. Moreover, the Plan Year in which the plaintiff resigned closed on December 31, 1998. Thus, under the express terms of Section 5.4, the plaintiff was entitled to a lump-sum distribution of his benefits no later than December 31, 1999. The complaint alleges that the plaintiff did not receive his benefits by December 31, 1999. Accordingly, the plaintiff has properly alleged a claim for delayed payment of his benefits under the express terms of the Plan.

The next question is what benefit is the plaintiff entitled to under Section 1132(a)(1)(B) for the period of delay before the plaintiff receives his benefits. The Plan does not specifically mention a participant's right to recover interest for the period of delay in receiving benefits. However, the Second Circuit's recent decision in *Dunnigan* teaches that the interest after a reasonable period of delay can be an implicit benefit under the terms of a benefit plan. *See Dunnigan,* 277 F.3d at 230–31 (stating the interest after a reasonable period of delay would seem to be an implicit benefit under an employee benefit plan). Viewing the facts in the light most favorable to the plaintiff, the Court concludes that the interest after a reasonable period of delay can be an implicit benefit under the Plan. Accordingly, the defendants' motion to dismiss the first cause of action based upon the theory that the defendants failed to timely provide the plaintiff with his benefits as required under Section 5.4 of the Plan is denied.

### 2. Other Investment Options under the Plan

#### a. Section 4.9

Section 4.9 of the Plan provides in pertinent part:

*Participants' Right to Diversify.* During the 90 day period after the close of each Plan Year in his Qualified Election Period (as defined below), a Qualified Participant (as defined below) may elect, modify or revoke an election, or make a new election, to transfer a portion (not to exceed the Maximum Allocation) of the value of his Accounts as of the close of the Plan Year immediately preceding the election to one or more of at least three separate funds which the Plan Administrator shall make available under the Trust Fund to receive such transfers.

Plan § 4.9. A Qualified Participant is defined as "a Participant, or former Participant who has not received a distribution of his entire vested interest in the Plan and who has both reached age 55 and has been an Active Participant in the Plan for at least ten Plan Years." Plan § 4.9(a). To be a Qualified Participant, one need only be a Participant. The plaintiff alleges that he was a Participant in the Plan from 1991 to July of 1998. Thus, the plaintiff was entitled to diversify his accounts under Section 4.9 of the Plan during 1991 to July of 1998.

■ Under Section 4.9, the defendant was required to make available to the plaintiff for his accounts at least three separate funds under the Employee Stock Plan. *Id.* The defendants failed to provide these options to the plaintiff. Accordingly, the plaintiff has properly alleged that the defendants have not complied with Section 4.9 of the Plan.

The next question is what benefit is the plaintiff entitled to under Section 1132(a)(1)(B) for the defendants' failure to make at least three separate funds available to him during 1991 to July of 1998. The Plan does not specify what benefit the Qualified Participants are entitled to when the defendants do not comply with Section 4.9.

Viewing the facts in the light most favorable to the plaintiff and considering the recent Second Circuit decision in *Dunnigan*, an implicit benefit under the terms of the Plan for a breach of Section 4.9 can exist. *See Dunnigan*, 277 F.3d at 230–31 (stating the interest after a reasonable period of delay would seem to be an implicit benefit under an employee benefit plan).

■ Moreover, the measure of the lost benefits to the plaintiff can be measured by the difference between what the Plan actually earned on the present investment and what the Plan could have earned had other funds been made available as required under Section 4.9. *Cf. Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (holding the measure of loss involving a breach of fiduciary duty under 29 U.S.C. § 1109 "requires a comparison of what the Plan actually earned on . . . [the present] investment with what the Plan would have earned had the funds been available for other Plan purposes."). Accordingly, the defendants' motion to dismiss the first cause of action based upon the theory that the defendants failed to provide the plaintiff, while he was a Qualified Participant, with three separate investment options as required by Section 4.9 is denied.

However, the plaintiff was not entitled under Section 4.9 to direct his share of the money in the Plan into other investments after he resigned from Computer Management. Upon his resignation in July of 1998, the plaintiff lost his status as a Qualified Participant because (1) he was no longer a participant and (2) he was no longer a former Participant under Section 4.9(a), in that he was not an Active Participant in the Plan for at least ten Plan Years. Accordingly, the defendants' motion to dismiss the first cause of action is granted to the extent that the plaintiff is not entitled to seek recovery for the defendants' alleged failure to provide three separate investment options under Section 4.9 after he resigned from Computer Management.

**b. Section 4.10**

Section 4.10 of the Plan provides in pertinent part:

*Investment Elections.* Each Participant shall have the right to direct the Trustee to invest all or any part of his Investment Account in one or more investment funds maintained or selected by the Trustee, which may be mutual funds registered under the Investment Com-

pany Act of 1940, as amended. Each Participant shall be notified of the availability of such right by the Plan Administrator. Each January 1 and July 1, Participants may direct that their Investment Accounts be invested in the then available funds in such increments as may be specified by the Participant. . . .

Plan § 4.10. Investment Account is defined as "a Participant's interest in the Trust Fund other than the portion of his interest represented by the Employer Stock Account." *Id.* at 10. Employer Stock Account is defined as "a Participant's interest in the Employer Stock held under this plan." *Id.*

■ The plaintiff alleges that the defendants did not provide him with alternative investments for his Investment Account during the period of 1991 to July of 1998. Section 4.10 requires the defendants to make one or more investment funds available to the participants to invest all or any part of his or her Investment Account. Viewing the facts in the light most favorable to the plaintiff, the Court concludes that the alleged failure of the defendants to provide an investment option to the plaintiff for his Investment Account during 1991 to July of 1998 can be an implicit benefit under the Plan. *See Dunnigan,* 277 F.3d at 230–31 (suggesting interest is an implicit benefit under an employee benefit plan). *Cf. Donovan,* 754 F.2d at 1056 (holding the measure of loss involving a breach of fiduciary duty under 29 U.S.C. § 1109 "requires a comparison of what the Plan actually earned on . . . [the present] investment with what the Plan would have earned had the funds been available for other Plan purposes."). Accordingly, the defendants' motion to dismiss the first cause of action based upon the theory that the defendants failed to provide the plaintiff with at least one investment option as required by Section 4.10 is denied.

**E. As to Recovery of Equitable Relief under Section 1132(a)(3)**

ERISA provides:

A civil action may be brought—

.        .        .        .        .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

29 U.S.C. § 1132(a) (emphasis added). The Supreme Court has stated that Section 1132(a)(3) is a "catchall" provision that acts as " 'a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] . . . does not elsewhere adequately remedy.' " *Dunnigan v. Metro. Life Ins. Co.,* 277 F.3d 223, 228 (2d Cir.2002) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). Section 1132(a)(3) has generally been construed "not to provide for an award of extracontractual money damages." *Id.*

In *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir.1999), the Second Circuit addressed the scope of the "equitable relief" provision of 29 U.S.C. § 1132(a)(3)(B). In *Strom,* a widow filed an action to recover the supplemental insurance coverage that her husband had requested but which did not become effective upon her husband's death because of the employer's error which caused a delay in the implementation of the policy. *Id.* at 141. The Court found that the widow could recover under Section 1132(a)(3)(B) if she could prove that the employer, who was a fiduciary, breached its ERISA fiduciary duty. *Id.* at 144, 150. The Court held that the relief that the plaintiff sought (recovery of the supplemental insurance coverage) was

"make whole relief" because the objective of this relief is "to eliminate the direct economic effect of an alleged violation of [ERISA] ..." which would be equitable relief within the meaning of Section 1132(a)(3)(B). *Id.* at 147, 150.

### 1. Diversification of Investments

ERISA provides in pertinent part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. . . .

29 U.S.C. § 1104(a)(1)(C). The plaintiff alleges that the defendants did not properly diversify the assets of the Plan after the Computer Management stock was sold in March of 1999.

■ Courts have found diversification lacking in circumstances where investments representing a large percentage of the plan assets were invested in a single vehicle. *Marshall v. Teamsters Local 282 Pension Trust Fund,* 458 F.Supp. 986, 990–91 (E.D.N.Y.1978) (stating plan having 36 percent of its assets in a single loan was not properly diversified). Here, the plaintiff alleges that the defendants invested 100 percent of the assets from the sale of the Computer Management stock in a money market. Viewing the facts in the light most favorable to the plaintiff, the Court finds that the plaintiff has stated a claim that the defendants failed to properly diversify the assets of the Plan in March of 1999.

■ The next issue is whether the relief that the plaintiff seeks for this alleged fiduciary breach is recoverable under Section 1132(a)(3)(B). Viewing the facts in the light most favorable to the plaintiff, the Court concludes that the relief sought—

the difference between what the Plan earned between March of 1999 and April of 2000 and what the Plan would have earned had the trustees diversified the Plan in accordance with ERISA—would eliminate the direct economic effect of the alleged ERISA violation. *See Strom,* 202 F.3d at 147. This relief would put the plaintiff in the financial position that he would have been in had the defendants complied with the ERISA requirement to properly diversify the assets under the Plan. Accordingly, the defendants' motion to dismiss the second cause of action is denied.

### 2. Interest for Delayed Payment of the Benefits

■ The Second Circuit has recently stated that a plaintiff can recover the interest on benefits paid after a period of delay as equitable relief under Section 1132(a)(3)(B). *Dunnigan,* 277 F.3d at 229–30. In particular, "[w]here interest is sought to make the plaintiff whole by eliminating the effect of a defendant's breach of a fiduciary duty, we see no reason why such interest should not be deemed 'appropriate equitable relief' within the scope of § [1132(a)(3)(B) . . . .]" *Id.* at 229. Moreover, "[w]hen benefits are paid only after the date on which the beneficiary was entitled to receive them under the terms of the plan, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified). An award of interest in such circumstances serves as an equitable make-whole remedy." *Id.*

Here, the plaintiff seeks equitable relief for the defendants' failure to timely provide him with his benefits under the Plan. Viewing the facts in the light most favorable to the plaintiff, the Court finds that the plaintiff has adequately stated a claim

under Section 1132(a)(3)(B) for the interest on the benefits paid after a period of delay. Accordingly, the defendants' motion to dismiss the second cause of action is denied.

## III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the defendants' motion to dismiss the third cause of action for federal common law breach of contract is **GRANTED;** and it is further

**ORDERED,** that the defendants' motion to dismiss the first and second causes of action on the grounds that the plaintiff lacks standing under ERISA is **DENIED;** and it is further

**ORDERED,** that the defendants' motion to dismiss the first cause of action under 29 U.S.C. § 1132(a)(1)(B) based upon the theory that the defendants failed to provide the plaintiff with his benefits in a timely fashion as required under Section 5.4 of the Plan is **DENIED;** and it is further

**ORDERED,** that the defendants' motion to dismiss the first cause of action under 29 U.S.C. § 1132(a)(1)(B) based upon the theory that the defendants failed to provide the plaintiff with three separate investment options for his accounts while he was a Qualified Participant as required under Section 4.9 of the Plan is **DENIED** but **GRANTED** to the extent that the plaintiff, after losing his status as a Qualified Participant in July of 1998, seeks to recover under Section 4.9; and it is further

**ORDERED,** that the defendants' motion to dismiss the first cause of action under 29 U.S.C. § 1132(a)(1)(B) based upon the theory that the defendants failed to provide the plaintiff with at least one investment option for his Investment Account under Section 4.10 of the Employee Stock Plan is **DENIED;** and it is further

**ORDERED,** that the defendants' motion to dismiss the second cause of action for "equitable relief" under 29 U.S.C. § 1132(a)(3)(B) is **DENIED**.

**SO ORDERED.**